COPY

1  Gregory C. Nuti (Bar No. 151754)
   Schnader Harrison Segal & Lewis LLP
2  One Montgomery Street, Suite 2200
   San Francisco, CA 94104-5501
3  Telephone: 415-364-6700
   Facsimile: 415-364-6785
4  gnuti@schnader.com

5  Arlene P. Messinger
   Assistant General Counsel for SBIC Enforcement
6  U.S. Small Business Administration
   409 3rd Street, S.W., Seventh Floor
7  Washington, D.C. 20416
   Telephone (202) 205-6857
8  Facsimile (202) 481-0325

9  Attorneys for Plaintiff,
   United States Small Business Administration in its
10 capacity as Receiver for Alto Tech II, L.P.

ORIGINAL FILED
AUG 3 1 2007
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13               SAN FRANCISCO DIVISION

*SC*

14  United States Small Business Administration in     Case No.:
    its capacity as Receiver for Alto Tech II, L.P.,
15                                                      C 07  4530
                                                        COMPLAINT FOR:
16                    Plaintiff,                        (1) BREACH OF FIDUCIARY DUTY;
                                                        (2) NEGLIGENCE;
17           vs.                                        (3) BREACH OF PARTNERSHIP
                                                            AGREEMENT; AND
18  Alto Tech Ventures, LLC, a Delaware limited        (4) BREACH OF MANAGEMENT
    liability company; Alto Tech Management ,              AGREEMENT
19  LLC, a California limited liability company;
    Gloria Chen Wahl, an individual; Walter T.G.
20  Lee, an individual and Thanos Triant, an
    individual,
21
                      Defendants.
22

23        Plaintiff, the United States Small Business Administration ("SBA") in its capacity as

24  Receiver for Alto Tech II, L.P. ("Alto Tech") alleges as follows:

25                              **PARTIES**

26        1.    SBA is the duly appointed receiver for Alto Tech ("Plaintiff" or "Receiver")

27  pursuant to the terms of that certain Stipulation for Consent Order of Receivership dated June 21,

28  2006 ("Consent Order) issued by this Court in the related action captioned *United States of*

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

SFDATA 626143_1

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

1    *America v. Alto Tech II, L.P.,* case number C06-3879 EMC, pending in this Court ("Receivership

2    Action"). A copy of the Consent Order is attached hereto as **Exhibit A** and incorporated herein

3    by reference.

4        2.    The Receiver was appointed for the purpose of among other things pursuing

5    claims and claimants of Alto Tech. The Receiver maintains its principal place of business at 666

6    11th Street N.W., Washington, D.C. 20001.

7        3.    Alto Tech is a limited partnership formed under the laws of the State of

8    Delaware pursuant to that certain Agreement of Limited Partnership of Alto Tech II, LP dated

9    and effective as of April 7, 2000 (the "Partnership Agreement"). A copy of the Partnership

10   Agreement is attached hereto as **Exhibit B**.

11       4.    Defendant Alto Tech Ventures, LLC ("ATV") is a Delaware limited

12   liability company with its principal place of business located at 707 Menlo Avenue, Suite 120,

13   Menlo Park, California. ATV is Alto Tech's managing general partner.

14       5.    Defendant Alto Tech Management, LLC ("ATM") is a California limited

15   liability company with its principal place of business located at 707 Menlo Avenue, Suite 120,

16   Menlo Park, California.

17       6.    Plaintiff is informed and believes and thereon alleges that defendant

18   Gloria Chen Wahl ("Wahl") is an individual residing at 1130 Tournament Drive, Hillsborough,

19   California 94010.

20       7.    Plaintiff is informed and believes and thereon alleges that defendant

21   Walter T.G. Lee ("Lee") is an individual residing at 234 Santa Margarita Avenue, Menlo Park,

22   California 94025.

23       8.    Plaintiff is informed and believes and thereon alleges that defendant

24   Thanos Triant ("Triant") is an individual residing at 2170 Stockbridge, Woodside, California

25   94062.

26       9.    At all times herein mentioned, each defendant was an agent, servant,

27   employee, joint venturer of and with other defendants herein named and, in doing the acts herein

28

2

1  alleged, were acting within the course and scope of their authority as agents, servants,

2  employees, and joint venturers by and with the knowledge, authority, consent and ratification of

3  the other defendants.

4  <u>**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNEMNT**</u>

5       10.    This action arises under 15 U.S.C. § 687c, the Small Business Investment

6  Act of 1958 (the "Act") as implemented by 13 CFR Part 107 (the "Regulations") and related

7  state statutes. The Court has jurisdiction over this action pursuant to the Consent Order, 28

8  U.S.C § 1331, 15 U.S.C. §§ 687c and 687h, 28 U.S.C. §§ 754, 1692 and 1367. Those causes

9  which arise under the laws of the States of California and Delaware are pendent or ancillary

10  causes under 28 U.S.C. § 1367 to the Receivership Action referred to in Paragraph 1 above.

11       11.    Venue is proper in the Northern District of California pursuant to 28

12  U.S.C. §1391 because the Defendants maintain offices, transact business, and reside within the

13  District. Venue is also proper pursuant to 28 U.S.C. § 754 as this action is ancillary to this

14  Court's exclusive jurisdiction over the Receivership Estate of Alto Tech.

15       12.    The assignment of this action to the San Francisco division of this Court is

16  proper pursuant to Civil Local Rule 3-2(c) as a substantial part of the events giving rise to the

17  claims occurred in San Mateo county.

18  <u>**COMMON ALLEGATIONS**</u>

19       13.    Under the Receivership Order, this Court has charged the Receiver with

20  pursuing and preserving all claims of Alto Tech. The Receiver has determined that certain of the

21  acts and omissions described herein provide private, civil causes of action in favor of Alto Tech.

22  Congress passed the Act and the Regulations to encourage the growth of small businesses by

23  compensating for the difficulty they may have in obtaining financing from conventional lenders.

24  To accomplish this objective, the Act authorizes the SBA to license Small Business Investment

25  Companies ("SBICs") to provide capital to qualified small business concerns in strict

26  conformance with the Act and the Regulations.

27       14.    The Act authorizes the SBA to prescribe regulations governing the

28  operations of SBICs, 15 U.S.C. § 687(c). SBA has exercised that authority and has promulgated

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

1  regulations reported in Part 107 of Title 13 of the Code of Federal Regulations (the

2  "Regulations")

3        15.     SBICs are required to comply with all provisions of the Act and

4  Regulations, which together impose reporting requirements and limitations on the activities of

5  SBICs' managers, partners, officers, directors, employees and shareholders.

6        16.     The SBA has, pursuant to 15 U.S.C. § 687(c), promulgated Regulations

7  which prohibit any officer, director, or shareholder from engaging in ant activities which would

8  constitute a violation of the Regulations.

9        17.     Pursuant to 15 U.S.C. § 687f(a), the Act makes it unlawful for any

10  person who, directly or indirectly, authorizes orders, participates in, or causes, brings about,

11  counsels, aids, or abets in the commission of any acts, practices, or transactions which constitute

12  or will constitute, in whole or in part, a violation of any provision of the Act or Regulations..

13        18.     Pursuant to 15 U.S.C. § 687f(b), the Act makes it unlawful for any

14  officer, director, employee, agent, or other participant in the management or conduct of the

15  affairs of an SBIC to engage in any act or practice, or to omit any act, in breach of his or her

16  fiduciary duty, if, as a result thereof, the SBIC suffers or is in imminent danger of suffering

17  financial loss or other damage.

18        19.     Alto Tech was formed solely for the purpose operating as a venture

19  capital fund licensed as a SBIC under the Act and the Regulations. Alto Tech at all relevant

20  times obtained and held U.S. Small Business Administration Small Business Investment

21  Company License No. 09/79-0431.

22        20.     At all relevant times, ATV was Alto Tech's managing general partner.

23  Defendants Wahl, Lee and Triant were the managing members of ATV. The management and

24  operations of Alto Tech, including without limitation, the formulation of the investment policy

25  vested exclusively in ATV, which authority was governed and regulated by the Act and

26  Regulations.

27        21.     At all relevant times, ATM acted as the Investment Advisor/Manager for

28  Alto Tech pursuant to the terms of that certain Management Services Agreement between Alto

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

4

1   Tech and ATM dated April 12, 2000. A copy of the Management Services Agreement is

2   attached hereto as **Exhibit C**. At all relevant times, Wahl, Lee and Triant were managing

3   members of ATM.

4           22.     At all relevant times Andrew Wahl was married to defendant Wahl.

5           23.     At all relevant times, defendants ATV, ATM, Wahl, Lee and Triant each

6   were Control Persons as defined by 13 CFR 107.50.

7           24.     Defendants knew or should have known that each had a duty,

8   individually and collectively, to exercise the highest degree or loyalty, care, and diligence in the

9   management, conduct and direction of the business and financial affairs of Alto Tech.

10          25.     All persons and entities who, directly or indirectly, authorized, ordered,

11  participated in, or caused, brought about, counseled aided or abetted in the commission of any

12  acts, practices, or transactions which constituted, in whole or in part, a violation of any provision

13  of the Act or Regulations by Alto Tech knew or should have known that their acts and/or

14  omissions could foreseeably cause damage to Alto Tech for which they could be held liable.

15          26.     The Act also requires SBA to adopt regulations for the purpose of

16  controlling conflicts of interest, 15 U.S.C. § 687d. The SBA has adopted Regulations controlling

17  conflicts of interest involving SBICs, 13 C.F.R. § 107.730.

18          27.     13 CFR §107.50 defines Associates of a licensed SBIC to include any of

19  the following: a Control Person, employee or agent of a Partnership Licensee; an Investment

20  Adviser/Manager of any Licensee, including any person who contracts with a Control Person of

21  a Partnership Licensee to be the Investment Advisor/Manager of such Licensee, any close

22  relative of a Control Person, officer, director, employee or agent of a licensed SBIC, including

23  their spouses.

24          28.     13 CFR § 107.730 defines and prohibits financings that constitute

25  conflicts of interests. 13 CFR § 107.730(a) prohibits self dealing to the prejudice of the SBIC, its

26  shareholders, its partners, or the SBA and specifically prohibits financing to any Associates as

27  defined by 13 CFR § 107.50.

28

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

SFDATA 626143_1

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

1          29.    As the Control Persons and principals of Alto Tech, the defendants'
2    duties included, but were not limited to the following:

3        (a) managing, conducting and directing the business and financial affairs of Alto Tech in
4    accordance with the Act, Regulations, Partnership Agreement, and Management Agreement
5    applicable to Alto Tech;

6        (b) not violating any laws, the Act, Regulations, Partnership Agreement, and
7    Management Agreement applicable to Alto Tech;

8        (c) exercising control and supervision over the members, partners and employees of the
9    Alto Tech, and maintaining the divisions of authority and responsibility among the officers of
10    Alto Tech;

11        (d) reviewing each examination report of the affairs of Alto Tech by the SBA, to
12    implement the directions and instructions contained in such reports and related SBA directives,
13    and to establish and maintain procedures to ensure the correction and non-reoccurrence of any
14    deficiencies or regulatory violations set forth therein;

15        (e) ensuring that Alto Tech did not engage in any unlawful or imprudent lending or
16    investment practices;

17        (f) upon receiving notice or information of any unlawful or imprudent lending or
18    investment practice, conducting a thorough independent investigation, and acting promptly on all
19    facts which such investigation would have disclosed;

20        (g) adopting institutional policies or procedures, including but not limited to, lending or
21    investment policies or procedures to ensure that Alto Tech does not engage in unlawful or
22    imprudent business practices, and to ensure that the officers, principals and employees conduct
23    the business and financial affairs of Alto Tech in accordance with the Act, the Regulations,
24    Partnership Agreement, and Management Agreement applicable to Alto Tech;

25        (h) taking such action as necessary to ensure that the loans and investments of Alto Tech
26    are underwritten, approved, disbursed and collected in accordance with the Act, the Regulations,
27    Partnership Agreement, and Management Agreement applicable to Alto Tech;

28

1    (i) exercising independent judgment in the best interest of Alto Tech in the conduct of its

2    business and financial affairs; and

3    (j) not allowing any other directors, officers, employees, or associates to use the assets of

4    Alto Tech for their own personal gain or for the benefit of their interests to the detriment of Alto

5    Tech.

6    30.    In addition to the duties set forth in Paragraph 29 above, the duties of the

7    defendants as managers, general partners, principals and Control Persons of Alto Tech included,

8    but were not limited to, the following:

9    (a) investigating the creditworthiness of loan applicants, investees or their affiliates in

10   accordance with the Act and the Regulations before committing, closing and providing equity

11   capital or debt financing;

12   (b) investigating the background of companies and their principals, and analyzing the

13   viability of a company's business and financial affairs before making equity capital or debt

14   financing with Alto Tech's funds;

15   (c) extending credit to companies or their affiliates only in accordance with the Act and

16   the Regulations;

17   (d) committing, closing or disbursing funds to companies only after preparation and

18   execution of appropriate loan or investment documentation, and otherwise ensuring that the

19   company is using the funds consistent with the terms of the loan or investment; and monitoring

20   and collecting financings, and

21   (e) taking appropriate actions on troubled investments.

22   31.    At all relevant times, each of the defendants was an officer, director,

23   employee, agent or other participant in the management or conduct of the affairs of Alto Tech

24   and owed to Alto Tech fiduciary duties with respect to their acts and transactions involving Alto

25   Tech.

26   32.    At all relevant times, each of the defendants also owed to Alto Tech

27   ordinary duties of care, including without limitation duties of good faith and fair dealing, with

28   respect to their acts and transactions involving Alto Tech.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

7

1    33.    At all relevant times, the defendants were also required with respect to

2  their acts and transactions involving Alto Tech to obey applicable law and regulations and knew

3  or should have known that their failure to do so would likely cause damage or loss to Alto Tech.

4    34.    Plaintiff's claims arise from and are predicated upon violations of the Act

5  and the Regulations, breach of contract, as well as breach of duties, including fiduciary duties of

6  care, loyalty, diligence and fair dealing owed by the defendants as set forth below.

7    35.    In April 2004, Alto Tech filed suit in the United States District Court for

8  the Northern District of California against Optiva, Inc. ("Optiva") and certain of its principals,

9  **but not including Andrew Wahl**, alleging, *inter alia,* securities fraud, breach of contract and

10  breach of fiduciary duty (the "Optiva Complaint"), captioned *Altotech II, LP v. Optiva, Inc.*, case

11  no. C04-1464 (the "Optiva Litigation").  A copy of the Optiva Complaint is attached hereto as

12  **Exhibit D.**

13    36.    In the Optiva Complaint, Alto Tech, by and through ATV, its general

14  partner, ATM, its Investment Advisor/Manager, Wahl, Lee and Triant, the principals, managers

15  and Control Persons of ATV, ATM and Alto Tech, admit the following:

16    (a)    On or about November 21, 2001, Wahl, Lee and Triant were introduced to the

17  management of Optiva.  Optiva was in the process of recruiting executives to manage the

18  company while also raising capital in order to develop certain "nano" technology.

19    (b)    Optiva management provided Lee and Wahl a business plan and a White

20  Paper and showed Lee and Wahl dozens of Russian patents as part of their presentation to solicit

21  an investment by Alto Tech.  At that time, Lee and Wahl declined to have Alto Tech provide

22  financing for Optiva.

23    (c)    In March 2002, Optiva hired Andrew Wahl, defendant Wahl's husband, as its

24  Chief Financial Officer.  Two months later in May 2002, Optiva promoted Andrew Wahl to

25  Chief Executive Officer.

26    (d)    In May 2002, after Optiva hired Andrew Wahl as an officer, and thereafter

27  promoting him, ATV, ATM, Wahl, Lee and Triant changed their minds with respect to investing

28

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

SFDATA 626143_1

1  with Optiva.  They decided and agreed to provide Optiva with an equity investment of one

2  million five hundred thousand dollars ($1,500,000.00)("Series C Financing").

3          37.    Upon learning of the Optiva Complaint, the SBA in July 2004 sent a letter

4  to ATV, Wahl, Lee and Triant seeking additional information regarding the facts and

5  circumstances surrounding the Series C Financing and whether Alto Tech, ATV, ATM, Wahl,

6  Lee and Triant violated the Act and the Regulations by investing in a company which employed

7  Wahl's husband as an officer.

8          38.    In letter dated July 27, 2004, Wahl responded to the SBA's inquiries and

9  admitted the Series C Financing violated the Act and the Regulations.  "After review and

10  consultation with [counsel] we acknowledge that Alto Tech should have terminated its

11  discussions with Optiva and reversed its decisions to go forward once Optiva had retained

12  Andrew Wahl....We understand now that regardless of when a conflict arises in the investment

13  cycle, an SBIC may not invest in a company when a conflict exists." A copy of that letter is

14  attached hereto as **Exhibit E.**

15          39.    Alto Tech's Series C Investment in Optiva is a conflict of interest and

16  violates 13 CFR 107.730(a)(1).  As defined by 13 CFR 107.50, Andrew Wahl, as Wahl's

17  husband, is a Close Relative of Alto Tech and thus an Associate of Alto Tech.  Andrew Wahl's

18  position as an officer of Optiva made Optiva an Associate of Alto Tech.  Pursuant to 13 CFR

19  107.730(a), unless Alto Tech obtained a prior written exemption from the SBA for special

20  instance despite presenting a conflict of interest, Alto Tech was prohibited from directly or

21  indirectly providing the Series C Financing to any Associates, including Optiva.

22          40.    Alto Tech never obtained the SBA's written approval for the Series C

23  Financing.

24          41.    The Series C Financing is now worthless.  Plaintiff is informed and

25  believes and thereon alleges that Alto Tech only recovered $250,000 from Optiva on account of

26  the Series C Financing.

27  //

28  //

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

9

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

## COUNT I

## BREACH OF FIDUCIARY DUTY AGAINST ATV, ATM,

## WAHL, LEE AND TRIANT

42.    Plaintiff hereby refers to Paragraphs 1 through 41, inclusive, and by such reference hereby incorporates and re-alleges them herein.

43.    The Act and the Regulations, as well as state law, impose fiduciary duties and obligations owed to Alto Tech on the Control Persons, officers, directors, managers and general partners of Alto Tech. Defendants ATV, ATM, Wahl, Lee and Triant, as the operating and controlling partners, managers, directors and Control Persons of Alto Tech were subject to these fiduciary duties and responsibilities. These fiduciary duties and obligations required that they act with fidelity, due care and diligence in the performance of their duties and responsibilities in the management and administration of the affairs of Alto Tech, and in the use and preservation of its property and assets.

44.    Each of ATV, ATM, Wahl, Lee and Triant had the duty and responsibility to ensure that effective internal controls and safeguards were in place to prohibit mismanagement, conflicts of interest and personal profit to the detriment of Alto Tech, and to safeguard the financial soundness of Alto Tech.

45.    Each of ATV, ATM, Wahl, Lee and Triant had an obligation to keep informed of the partnership's affairs and to exercise reasonable diligence in managing the partnership's business. Each of ATV, ATM, Wahl, Lee and Triant was required to give their undivided loyalty to Alto Tech and to place Alto Tech's interests above their personal interests, to avoid any personal interest which conflicted with that of Alto Tech, and to discharge their responsibilities in the best interests of Alto Tech alone.

46.    Additionally, the Act and Regulations, pursuant to 15 U.S.C. § 687f(b), make it unlawful for any officer, director, employee, agent or other participant in the management or conduct of the affairs of an SBIC to engage in any act or practice, or to omit any act in breach of his or her fiduciary duty as such officer, director, employee, agent or participant

10

1    if, as a result, the SBIC suffers or is in imminent danger of suffering financial loss or other

2    damage.

3              47.      Pursuant to 15 U.S.C. § 687f(a), a violation of the Act or its Regulations

4    by an SBIC is deemed a violation and an unlawful act on the part of any person who, directly or

5    indirectly, authorizes, orders, participates in, or causes, brings about, counsels, aids, or abets in

6    the commission of any acts, practices, or transactions which constitute the violation.

7              48.      Defendants ATV, ATM, Wahl, Lee and Triant, jointly and severally,

8    breached their fiduciary duties by their negligence, gross negligence, and/or conscious disregard

9    of the best interests of Alto Tech by failing to prevent, and by permitting, approving and/or

10   authorizing and/or participating in the acts of mismanagement, conflicts of interest and self-

11   dealing alleged in this Complaint, including, but not limited to, allowing and approving the

12   Series C Financing.

13             49.      As the Receiver of Alto Tech, Plaintiff has been damaged and is entitled to

14   recover the losses which resulted from the breaches of fiduciary duties committed by ATV,

15   ATM, Wahl, Lee and Triant totaling at least $1,250,000.00.

16             Wherefore, Plaintiff prays for a judgment as set forth below.

17                                              **COUNT II**

18                    **NEGLIGENCE AGAINST ATV, ATM, WAHL, LEE AND**

19                                              **TRIANT**

20             50.      Plaintiff hereby refers to Paragraphs 1 through 49, inclusive, and by such

21   reference hereby incorporate and re-alleges them herein.

22             51.      The Act and the Regulations, as well as state law, impose duties and

23   obligations owed to Alto Tech on the Control Persons, officers, directors, managers and general

24   partners of Alto Tech. Defendants ATV, ATM, Wahl, Lee and Triant, as the operating and

25   controlling general partner, principals, officers, directors and Control Persons of Alto Tech were

26   subject to these duties and responsibilities.  These duties and obligations required that they act

27   with fidelity, due care and diligence in the performance of their duties and responsibilities in the

28   management and administration of the affairs of Alto Tech.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

11

SFDATA 626143_1

1    52.    Each of ATV, ATM, Wahl, Lee and Triant had the duty and responsibility
2  to ensure that effective internal controls and safeguards were in place to prohibit
3  mismanagement, conflicts of interest and personal profit to the detriment of Alto Tech, and to
4  safeguard the financial soundness of Alto Tech. Each of ATV, ATM, Wahl, Lee and Triant had
5  the duty and responsibility to ensure that Alto Tech was operated and managed consistent with
6  and according the requirements of the Act and Regulations.

7    53.    The Act and Regulations, pursuant to 15 U.S.C. § 687f(b), make it
8  unlawful for any officer, director, employee, agent or other participant in the management or
9  conduct of the affairs of an SBIC to engage in any act or practice, or to omit any act in breach of
10  his or her fiduciary duty as such officer, director, employee, agent or participant if, as a result,
11  the SBIC suffers or is in imminent danger of suffering financial loss or other damage.

12    54.    Pursuant to 15 U.S.C. § 687f(a), a violation of the Act or its Regulations
13  by an SBIC is deemed a violation and an unlawful act on the part of any person who, directly or
14  indirectly, authorizes, orders, participates in, or causes, brings about, counsels, aids, or abets in
15  the commission of any acts, practices, or transactions which constitute the violation.

16    55.    Defendants ATV, ATM, Wahl, Lee and Triant, jointly and severally,
17  breached their duties by their negligence, gross negligence, and/or conscious disregard of the
18  best interests of Alto Tech by failing to prevent, and by permitting, approving and/or authorizing
19  and/or participating in the acts of mismanagement, conflicts of interest and self-dealing alleged
20  in this Complaint, including, but not limited to, allowing and approving the Series C Financing.

21    56.    As the Receiver of Alto Tech, Plaintiff has been damaged and is entitled to
22  recover the losses which resulted from the breaches of duties committed by ATV, Wahl, Lee and
23  Triant totaling at least $1,250,000.00.

24    Wherefore, Plaintiff prays for a judgment as set forth below.

25  //

26  //

27  //

28  //

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

SFDATA 626143_1

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

## COUNT III

## BREACH OF THE PARTNERSHIP AGREEMENT

## AGAINST ATV, WAHL, LEE AND TRIANT

57.     Plaintiff hereby refers to Paragraphs 1 through 56, inclusive, and by such reference hereby incorporates and re-alleges them herein.

58.     On or about April 7, 2000, ATV entered into the Partnership Agreement with Alto Tech.

59.     Plaintiff and Alto Tech have performed all conditions, covenants and promises required of it under the Partnership Agreement, except where performance was prevented or excused by Defendants' conduct.

60.     Pursuant to 15 U.S.C. § 687f(a), a violation of the Act or its Regulations by an SBIC is deemed a violation and an unlawful act on the part of any person who, directly or indirectly, authorizes, orders, participates in, or causes, brings about, counsels, aids, or abets in the commission of any acts, practices, or transactions which constitute the violation.

61.     Under applicable state law, Wahl, Lee and Triant, as managers of ATV, are personally liable for judgments, debts, obligations, or liabilities of ATV on account of their personal participation in tortuous, wrongful or criminal conduct when performing their duties as managers of ATV.

62.     Under paragraph 2.02(ii) of the Partnership Agreement, ATV, Wahl, Lee and Triant agreed not to "lend any assets of the Partnership to...the Investment Advisor/Manager, or any director, officer, partner, stockholder, employee or Affiliate of the General Partner or the Investment Advisor/Manager...."

63.     Under paragraph 2.02(v) of the Partnership Agreement, ATV agreed not to invest in any company in which an SBIC is prohibited from investing by the Act.

64.     Defendants ATV, Wahl, Lee and Triant breached the terms of the Partnership Agreement by, among other things, providing the Series C Financing to Optiva as the Series C Financing violated the Act and Regulations as set forth herein.

SFDATA 626143_1

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

1    65.    As Receiver of Alto Tech, Plaintiff has suffered damages legally caused

2 by the defendants' breach of the Partnership Agreement as alleged herein, including, but not

3 limited to monetary damages of not less than $1,250,000.00.

4    Wherefore, Plaintiff prays for a judgment as set forth below.

5    ## COUNT IV

6    ## BREACH OF THE MANAGEMENT AGREEMENT

7    ## AGAINST ATM, WAHL, LEE AND TRIANT

8    66.    Plaintiff hereby refers to Paragraphs 1 through 65, inclusive, and by such

9 reference hereby incorporates and re-alleges them herein.

10    67.    On or about April 7, 2000, ATM entered into the Management Agreement

11 with Alto Tech.

12    68.    Plaintiff and Alto Tech have performed all conditions, covenants and

13 promises required of it under the Management Agreement, except where performance was

14 prevented or excused by Defendants' conduct.

15    69.    Pursuant to 15 U.S.C. § 687f(a), a violation of the Act or its Regulations

16 by an SBIC is deemed a violation and an unlawful act on the part of any person who, directly or

17 indirectly, authorizes, orders, participates in, or causes, brings about, counsels, aids, or abets in

18 the commission of any acts, practices, or transactions which constitute the violation.

19    70.    Under applicable state law, Wahl, Lee and Triant, as managers of ATM,

20 are personally liable for judgments, debts, obligations, or liabilities of ATM on account of their

21 personal participation in tortuous, wrongful or criminal conduct when performing their duties as

22 managers of ATM.

23    71.    Under paragraph 2 of the Management Agreement, ATM agreed to locate,

24 develop, investigate, analyze and present to Alto Tech "suitable investment opportunities, which

25 are consistent with the Partnership's status as an SBIC and with the policies of the Partnership as

26 established from time to time by the Partnership's General Partner."

27    72.    Defendants ATM, Wahl, Lee and Triant breached the terms of the

28 Management Agreement by, among other things, developing, investigating, analyzing and

14

SFDATA 626143_1

1  presenting the Series C Financing to Optiva as a suitable investment opportunity consistent with

2  Alto Tech's status as a SBIC under the Act and Regulations.  In fact, the Series C Financing

3  violated the Act and Regulations as set forth herein.

4          73.     As the Receiver of Alto Tech, Plaintiff has suffered damages legally

5  caused by the defendants' breach of the Management Agreement as alleged herein, including,

6  but not limited to monetary damages of not less than $1,250,000.00.

7          Wherefore, Plaintiff prays for a judgment as set forth below.

8                          **PRAYER FOR RELIEF**

9          WHEREFORE, Plaintiff asks this Court for a judgment in favor of the Plaintiff, as

10 follows:

11         1.      On Count I, against defendants ATV, ATM, Wahl, Lee and Triant, jointly and

12 severally, in the principal amount of not less than $1,250,000.00;

13         2.      On Count II, against defendants ATV, ATM, Wahl, Lee and Triant, jointly and

14 severally, in the principal amount of not less than $1,250,000.00;

15         3.      On Count III, against defendants ATV, Wahl, Lee and Triant, jointly and

16 severally, in the principal amount of not less than $1,250,000.00;

17         4.      On Count IV, against defendants ATM, Wahl, Lee and Triant, jointly and

18 severally, in the principal amount of not less than $1,250,000.00;

19         5.      Awarding prejudgment and post-judgment interest against each Defendant;

20         6.      Awarding the Plaintiff costs of suit; and

21         7.      For such other and further relief as this Court deems just and proper.

22 //

23 //

24 //

25 //

26 //

27 //

28 //

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

SFDATA 626143_1

1   Dated: August 30, 2007

2                                           SCHNADER HARRISON SEGAL & LEWIS LLP

3

4                                           By:

5                                                Gregory C. Nuti
                                                 Attorneys for Plaintiff, the United States
6                                                Small Business Administration in its
                                                 capacity as Receiver for Alto Tech II, L.P.
7   Dated: August 30, 2007

8                                           U.S. Small Business Administration

9

10                                          By:

                                                 Arlene P. Messinger
11                                               Office of General Counsel
                                                 Attorneys for Plaintiff,
12                                               United States Small Business
                                                 Administration in its capacity as Receiver
13                                               for Alto Tech II, L.P.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: 415-364-6700

SFDATA 626143_1

EXHIBIT A

**ORIGINAL**
**FILED**

1   KEVIN V. RYAN (SBN 118321)
    United States Attorney                             JUN 2 1 2006
2   JOANN M. SWANSON (SBN 88143)
    Chief, Civil Division                        RICHARD W. WIEKING
3   EDWIN L. JOE (SBN 112328)                   CLERK, U.S. DISTRICT COURT
                                              NORTHERN DISTRICT OF CALIFORNIA
4   Special Assistant United States Attorney

5        455 Market Street, 6th Floor
         San Francisco, California 94105-2420
6        Telephone:    (415) 744-8494
7        Facsimile:    (202) 481-1810 or (415) 744-6812
         Email:        edwin.joe@sba.gov
8
9   Attorneys for Federal Plaintiff

10            IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                   SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,          )
15            Plaintiff,               )    E-Filing
                                       )
16          v.                         )    Civil Case No.  C06 3879 EMC
                                       )
17  ALTOTECH II, L.P.,                 )    STIPULATION FOR CONSENT
                                       )    ORDER OF RECEIVERSHIP
18                                     )
19          .  Defendant.              )
                                       )
20  _____ )

21       WHEREAS, Plaintiff, United States of America, on behalf of its agency, the United States

22  America, has filed and caused to be served upon defendant and its General Partner, AltoTech

23  Ventures, LLC, a complaint; and

24       Whereas, the parties desire to resolve the matter amicably and without further proceedings,

25
26  trial or adjudication of any issue and stipulate as follows:

27

28  STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP                                    1

1    KEVIN V. RYAN (SBN 118321)
    United States Attorney
2    JOANN M. SWANSON (SBN 88143)
    Chief, Civil Division
3    EDWIN L. JOE (SBN 112328)
4    Special Assistant United States Attorney

5       455 Market Street, 6th Floor
       San Francisco, California 94105-2420
6       Telephone:    (415) 744-8494
7       Facsimile:     (202) 481-1810 or (415) 744-6812
       Email:       edwin.joe@sba.gov
8

9    Attorneys for Federal Plaintiff

10

11            IN THE UNITED STATES DISTRICT COURT

          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13

14    UNITED STATES OF AMERICA,      )
15           Plaintiff,           )    E-Filing
                         )
16         v.                 )    Civil Case No. C06 3879 EMC
                         )
17    ALTOTECH II, L.P.,         )    STIPULATION FOR CONSENT
18                          )    ORDER OF RECEIVERSHIP
                         )
19          Defendant.         )
20    _____ )

21       WHEREAS, Plaintiff, United States of America, on behalf of its agency, the United States
22
   America, has filed and caused to be served upon defendant and its General Partner, AltoTech
23
   Ventures, LLC, a complaint; and
24
25       Whereas, the parties desire to resolve the matter amicably and without further proceedings,

26    trial or adjudication of any issue and stipulate as follows:

27

28    STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP                  1

1    1. That defendant AltoTech II, LP, ("AltoTech" or "Licensee"), the holder of the U.S. Small

2    Business Administration's (SBA) Small Business Investment Company (SBIC) License No. 09/79-

3    0431 has a condition of Capital Impairment as that term is defined under Title 13 of the Code of

4    Federal Regulations, Part 107;

5

6    2. That this Court has jurisdiction over the subject matter of this action and over defendant;

7    3. That the only mutually agreeable method by which to distribute the assets of the Licensee

8    to the appropriate creditors and SBA is through the appointment of SBA as the receiver of the

9    Licensee pursuant to the following Consent Order of Receivership without further proceedings; and

10    4. To the entry of the following Consent Order of Receivership without further proceedings.

11    IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

12

13    1. Pursuant to the provisions of 15 U.S.C. §687c, this Court takes exclusive jurisdiction of

14    AltoTech II, L.P. ("AltoTech") and all of its assets and property, of whatever kind and wherever

15    located, and the United States Small Business Administration ("SBA") is hereby appointed Receiver

16    of AltoTech ("Receiver") to serve without bond until further order of this Court. The Receiver is

17    appointed for the purpose of marshalling and liquidating in an orderly manner all of AltoTech's

18

19    assets and satisfying the claims of creditors therefrom in the order of priority as determined by this

20    Court.

21    2. The Receiver shall have all powers, authorities, rights and privileges heretofore

22    possessed by the general partner, officers, directors, managers, investment advisors and other agents

23    of AltoTech under applicable state and federal law and by the Agreement of Limited Partnership, in

24    addition to all powers and authority of a receiver at equity, and all powers and authority conferred

25    upon the Receiver by the provisions of 15 U.S.C. § 687c and 28 U.S.C. § 754. The general partner,

26

27    management company, trustees, directors, officers, employees, managers, investment advisors and

28    STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP        2

1    agents of AltoTech are hereby dismissed.  Such persons and entities shall have no authority with

2    respect to AltoTech's operations or assets, except to the extent as may hereafter be expressly

3    granted by the Receiver.  The Receiver shall assume and control the operation of AltoTech and shall

4    pursue and preserve all of its claims.  Jurisdiction is conferred on this Court by virtue of the Small

5    Business Investment Act of 1958, as amended (hereinafter, the "Act"), Sections 308(d), 311 and

6    316, 15 U.S.C. §§ 687(d), 687c and 687h; and 28 U.S.C. § 1345.

7

8        3. The Receiver is entitled to take immediate possession of all assets, bank accounts or

9    other financial accounts, books and records and all other documents or instruments relating to the

10    Licensee.  The past and/or present general partner, management company, officers, directors,

11    managers, investment advisors, agents, trustees, attorneys, accountants, and employees of AltoTech,

12

13    as well as all those acting in their place, are hereby ordered and directed to turn over to the Receiver

14    forthwith all books, records, documents, accounts and all other instruments and papers of and

15    relating to AltoTech and its assets, whether real or personal, including but not limited to:

16        (i) all definitive agreements to which the Partnership is a party or is otherwise bound,

17        including, the Partnership Agreement and any amendments thereto,

18

19        (ii) a list of all limited partners including contact information,

20        (iii) all records related to portfolio company investments,

21        (iv) the financial books and records of AltoTech and

22        (v) copies of the financial books and records of the general partner and management

23        company and all other assets and property of AltoTech, whether real or personal.

24    The former General Partner,  and the management company, shall furnish a written statement within

25    fifteen (15) days after the entry of this Order, listing the identity, location and estimated value of all

26

27    assets of AltoTech as well as the names, addresses and amounts of claims of all known creditors of

28    STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP                                          3

1   AltoTech. Within thirty (30) days following the entry of this Order, such person shall also furnish a

2   written report describing all assets. All persons having control, custody or possession of any assets

3   or property of AltoTech are hereby directed to turn such assets and property over to the Receiver.

4       4. The Receiver shall promptly give notice of its appointment to all known partners,

5   officers, directors, agents, employees, shareholders, creditors and debtors of AltoTech, as the

6   Receiver deems necessary or advisable to effectuate the operation of the receivership. All persons

7   and entities owing any obligation or debt to AltoTech, until further ordered by this Court, shall pay

8   all such obligations in accordance with the terms thereof to the Receiver and its receipt for such

9   payments shall have the same force and effect as if AltoTech had received such payments.

10      5. The Receiver is hereby authorized to open such Receiver's accounts at banking or other

11  financial institutions to extend credit on behalf of AltoTech, to utilize SBA personnel, and to

12  employ such other personnel as it may deem necessary to effectuate the operation of the

13  receivership including, but not limited to, attorneys, accountants, and appraisers, and is further

14  authorized to expend receivership funds to compensate such personnel in such amounts and upon

15  such terms as the Receiver shall deem reasonable in light of the usual fees and billing practices and

16  procedures of such personnel. The Receiver is not required to obtain Court approval prior to the

17  disbursement of receivership funds for payments to personnel employed by the Receiver or for

18  expenses that the Receiver deems advantageous to the orderly administration and operation of the

19  receivership. In addition, the Receiver is authorized to reimburse the SBA for travel expenses

20  incurred by SBA personnel in the establishment and administration of the receivership. The

21  Receiver may, without further order of this Court, transfer, compromise, or otherwise dispose of any

22  asset (including without limitation any claim), other than real estate.

STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP                                    4

6. Alto Tech's past and/or present partners, officers, directors, agents, accountants, managers, shareholders, employees, debtors and creditors and other appropriate persons (including without limitation, the Defendant's portfolio of small business concerns and financial institutions doing business with Defendant and/or Defendant's portfolio of small business concerns) shall answer under oath to the Receiver all questions which the Receiver may put to them in compliance with the Federal Rules of Civil Procedure, and pursuant thereto shall produce any documents as required by the Receiver regarding the business of AltoTech, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to AltoTech. In the event that the Receiver deems it necessary to require the appearance of the aforementioned persons, the production of documents, information, or any other discovery concerning the assets, property or business operations of AltoTech, or any other matter relevant to the operation or administration of the Receivership or the collection of funds due to AltoTech, the Receiver shall make its discovery request(s) in compliance with the Federal Rules of Civil Procedure.

7. The parties, or any prospective parties, to any and all civil legal proceedings of any nature, excluding the instant proceeding, but including without limitation bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving AltoTech or any assets of AltoTech, including subsidiaries, partnerships and other business combinations of AltoTech, wherever located, or involving AltoTech, the Receiver, or any of AltoTech's or its general partner's or management company's past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third party plaintiff, third party defendant, or otherwise, are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding or any such

STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP                                        5

1    asset. All civil legal proceedings of any nature, excluding the instant proceeding, but including

2    without limitation bankruptcy proceedings, arbitration proceedings, foreclosure actions, default

3    proceedings, or other action of any nature involving AltoTech or any assets of AltoTech or its

4
     general partner or management company, including subsidiaries, partnerships and other business
5
6    combinations of AltoTech, wherever located, and excluding the instant proceeding, or involving

7    AltoTech, the Receiver, or any of AltoTech's past or present officers, directors, managers, agents, or

8    general or limited partners sued for, or in connection with, any action taken by them while acting in

9    such capacity of any nature, whether as plaintiff, defendant, third party plaintiff, third-party

10   defendant, or otherwise, are stayed in their entirety, and all Courts having any jurisdiction thereof

11   are enjoined from taking or permitting any action until further Order of this Court.
12
13        8. Further, as to a cause of action accrued or accruing in favor of AltoTech against a third

14   person or party, any applicable statute of limitation is tolled during the period in which this

15   injunction against the commencement of legal proceedings is in effect as to that cause of action.

16        9. AltoTech and its past and/or present directors, officers, managers, general or limited

17   partners, agents, investment advisors, employees and other persons acting in concert or participating
18
     therewith be, and they hereby are, enjoined from either directly or indirectly taking any actions or
19
20   causing any such action to be taken which would dissipate the assets and/or property of AltoTech to

21   the detriment of the Receiver appointed in this cause, including but not limited to destruction of

22   corporate records, or which would violate the Small Business Investment Act of 1958, as amended,

23   15 U.S.C. 661 et. seq., or the regulations promulgated thereunder ("Regulations"), 13 C.F.R. Part

24   107.
25
26        10. The Receiver is authorized to borrow on behalf of AltoTech, from the SBA, up to

27   $1,000,000 and is authorized to cause AltoTech to issue Receiver's Certificates of Indebtedness in

28   STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP                                    6

1  the principal amounts of the sums borrowed, which certificates will bear interest at or about 10

2  percent per annum and will have a maturity date no later than 18 months after the date of issue.

3  Said Receiver's Certificates of Indebtedness shall be deemed to be administrative expenses of the

4  Receivership.

5

6      11. This Court determines and adjudicates that SBA has made a sufficient showing that the

7  Licensee has violated the Act and Regulations, as alleged in the Complaint filed against AltoTech in

8  the instant action, to obtain the relief so requested.

9      12. SBA shall be appointed Receiver of AltoTech based on AltoTech's consent.

10      13. After completing its activities in accordance with this Order, the Receiver may submit a

11  report to this Court recommending that AltoTech's license as an SBIC be revoked.

12

13

14  READ AND AGREED BY ALTOTECH AND THE SMALL BUSINESS ADMINISTRATION,
    THROUGH THEIR DULY AUTHORIZED REPRESENTATIVES:

15

16  AltoTech II, LP
    By: AltoTech Ventures, LLC
17  Its:  General Partner

18

19     /s/ Gloria Wahl_____      6/1/06
    By: Gloria Wahl                    Date
20  Its: Manager

21

22
    The United States Small Business Administration
23

24     /s/ Thomas G. Morris_____      06/05/2006
25

26

27

28  STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP                              7

1  By: Thomas G. Morris                    Date
   Director, Office of Liquidation

2

3

4  PURSUANT TO STIPULATION OF THE PARTIES:

5  IT IS SO ORDERED,

6

7  DATED this _____ day of _Jun 21, 2006_____ 2006.

8

9                                    _/s/ WILLIAM ALSUP_____
10                                   UNITED STATES DISTRICT COURT JUDGE

11

12

13  Of Counsel:

14

15  ARLENE P. MESSINGER
    Assistant General Counsel for SBIC Enforcement
16

17      U.S. Small Business Administration
        409 Third Street, S.W. Seventh Floor
18      Washington, D.C. 20416

19      Email:      arlene.messingerlerner@sba.gov
20      Telephone:  (202) 205-6857
        Facsimile:  (202) 481-0325
21

22

23

24

25

26

27

28  STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP                        8

10. The Receiver is authorized to borrow on behalf of AltoTech, from the SBA, up to $1,000,000 and is authorized to cause AltoTech to issue Receiver's Certificates of Indebtedness in the principal amounts of the sums borrowed, which certificates will bear interest at or about 10 percent per annum and will have a maturity date no later than 18 months after the date of issue. Said Receiver's Certificates of Indebtedness shall be deemed to be administrative expenses of the Recoivership.

11. This Court determines and adjudicates that SBA has made a sufficient showing that the Licensee has violated the Act and Regulations, as alleged in the Complaint filed against AltoTech in the instant action, to obtain the relief so requested.

12. SBA shall be appointed Receiver of AltoTech based on AltoTech's consent.

13. After completing its activities in accordance with this Order, the Receiver may submit a report to this Court recommending that AltoTech's license as an SBIC be revoked.

READ AND AGREED BY ALTOTECH AND THE SMALL BUSINESS ADMINISTRATION, THROUGH THEIR DULY AUTHORIZED REPRESENTATIVES:

AltoTech II, LP
By: AltoTech Ventures, LLC
Its: General Partner

_[signature]_   6.1.2006

By: Gloria Wahl           Date
Its: Manager

The United States Small Business Administration

_[signature]_   06-05-2006

STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP                    7

1  By: Thomas G. Morris          Date
   Director, Office of Liquidation
2

3

4  PURSUANT TO STIPULATION OF THE PARTIES:

5  IT IS SO ORDERED,

6

7  DATED this _____ day of ____ JUN 2 1 2006 ____ 2006.

8

9

10                              WILLIAM ALSUP
                      UNITED STATES DISTRICT COURT JUDGE

11

12

13

14  Of Counsel:

15

16  ARLENE P. MESSINGER
    Assistant General Counsel for SBIC Enforcement

17
        U.S. Small Business Administration
18      409 Third Street, S.W. Seventh Floor
        Washington, D.C. 20416
19
        Email:      arlene.messingerlerner@sba.gov
20      Telephone:  (202) 205-6857
        Facsimile:  (202) 481-0325
21

22

23

24

25

26

27

28  STIPULATION FOR CONSENT ORDER OF RECEIVERSHIP                    8

EXHIBIT B

**Exhibit O-1**

*THE PARTNERSHIP INTERESTS HAVE NOT BEEN REGISTERED UNDER ANY FEDERAL OR STATE SECURITIES LAWS AND CANNOT BE SOLD, TRANSFERRED, ASSIGNED, HYPOTHECATED OR OTHERWISE DISPOSED UNLESS THEY ARE REGISTERED THEREUNDER OR EXEMPTIONS FROM SUCH REGISTRATIONS ARE AVAILABLE, AND THE REQUIREMENTS OF THE PARTNERSHIP AGREEMENT ARE SATISFIED.*

# AGREEMENT OF LIMITED PARTNERSHIP OF

# ALTOTECH II, LP

### Effective as of April 7, 2000

Table of Contents

Page

1.   General Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    1.01.  Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
            "Accumulated Prioritized Payments" . . . . . . . . . . . . . . . . . . . . . . . . 1
            "Act" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
            "Additional Private Limited Partners" . . . . . . . . . . . . . . . . . . . . . . . 1
            "Adjusted Capital Contribution" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
            "Adjustments" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
            "Affiliate" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Affiliated Venture Capital Fund" . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Agreement" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Assets" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Assets Under Management" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Associate" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Capital Account" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Capital Contribution" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Certificate of Limited Partnership" . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Charge" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Closing Capital Account" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            "Code" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Combined Capital" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Commencement Date" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Commitments" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Conflict Advisory Board" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Control Person" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Debentures" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Designated Party" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Distributable Security" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Earmarked Assets" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Earned Prioritized Payments" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "ERISA" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "General Partner" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Indemnifiable Costs" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
            "Investment Adviser/Manager" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            "Investment Advisers Act" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            "Investment Company Act" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            "Leverage" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            "Majority in Interest of the Private Limited Partners" . . . . . . . . . . . 4
            "Management Compensation" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            "Management Expenses" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            "Maximum Tax Liability" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
            "Net Losses" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

"Net Profits" .................................................................. 5
"Noncash Asset" ............................................................ 5
"Opening Capital Account" ................................................ 5
"Option Price" .............................................................. 6
"Optioned Partnership Interest" ........................................... 6
"Optionees" ................................................................ 6
"Optionor" ................................................................. 6
"Organization Expenses" .................................................... 6
"Outstanding Leverage" ..................................................... 6
"Participating Security" .................................................... 6
"Partners" ................................................................. 6
"Partnership" .............................................................. 6
"Partnership Percentage" ................................................... 6
"___ percent (___%) in interest of the Private Limited Partners" ......... 6
"Portfolio Companies" ...................................................... 6
"Portfolio Securities" ..................................................... 6
"Preferred Limited Partner" ................................................ 7
"Preferred Limited Partnership Interest" .................................. 7
"Principal" ................................................................ 7
"Prioritized Payment" ...................................................... 7
"Private Capital" .......................................................... 7
"Private Limited Partners" ................................................. 7
"Private Partners" ......................................................... 7
"Profit Participation" ..................................................... 7
"Qualified Nonprivate Funds" ............................................... 7
"Regulatory Capital" ....................................................... 7
"Remaining Portion" ........................................................ 7
"Retained Earnings Available for Distribution" ........................... 7
"SBA" ...................................................................... 7
"SBA Agreements" ........................................................... 7
"SBIC" ..................................................................... 7
"SBIC Act" ................................................................. 7
"SEC" ...................................................................... 8
"Securities Act" ........................................................... 8
"Special Advisory Board" ................................................... 8
"Special Private Limited Partner" .......................................... 8
1.02.   Name .................................................................. 8
1.03.   Principal Office; Registered Office; and Qualification ............... 8
1.04.   Commencement and Duration ............................................ 8
1.05.   Admission of Partners ................................................ 9
1.06.   Representations of Partners .......................................... 9
        (a)    General Partner ............................................... 9
        (b)    Private Limited Partners .................................... 10
        (c)    Tax Information ............................................. 10
1.07.   Notices With Respect to Representations by Private Limited Partners .. 11

1.08.   Liability of Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
1.09.   Repayment of Capital Contributions of Partners . . . . . . . . . . . . . . . . . . . . 11
1.10.   No Priorities of Limited Partners . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

2.   Purpose and Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
2.01.   Purpose and Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
2.02.   Restrictions on Powers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
2.03.   Unrelated Business Taxable Income . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
2.04.   Venture Capital Operating Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

3.   Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
3.01.   Authority of General Partner . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
3.02.   Authority of the Private Limited Partners . . . . . . . . . . . . . . . . . . . . . . . . . . 14
3.03.   Authority of the Preferred Limited Partners . . . . . . . . . . . . . . . . . . . . . . . . 14
3.04.   Acknowledgment of SBA Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
3.05.   The Investment Adviser/Manager . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
3.06.   Restrictions on Other Activities of the General Partner and its Affiliates . . . . . . 15
3.07.   Management Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
3.08.   Payment of Management Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
3.09.   Partnership Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
3.10.   Valuation of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
3.11.   Standard of Care . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
3.12.   Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
3.13.   Special Advisory Board and Conflict Advisory Board . . . . . . . . . . . . . . . . . 21

4.   Small Business Investment Company Matters . . . . . . . . . . . . . . . . . . . . . . . . . . 22
4.01.   SBIC Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
4.02.   Consent or Approval of, and Notice to, SBA . . . . . . . . . . . . . . . . . . . . . . . 22
4.03.   Provisions Required by the SBIC Act for Issuers of Participating Securities . . . 22
4.04.   Provisions Required by the SBIC Act for Issuers of Debentures . . . . . . . . . . . . 22
4.05.   Effective Date of Incorporated SBIC Act Provisions . . . . . . . . . . . . . . . . . . 23
4.06.   Admission of Preferred Limited Partners and Increased Commitments . . . . . . . 23
4.07.   Redemption and Withdrawal of Preferred Limited Partners . . . . . . . . . . . . . . 24
4.08.   Assignment of Right to Distributions by a Preferred Limited Partner . . . . . . . . 25
4.09.   Priority of Preferred Limited Partnership Interests on Liquidation . . . . . . . . . . 25
4.10.   SBA as Third Party Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

5.   Partners' Capital Contributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
5.01.   Capital Commitments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
5.02.   Capital Contributions by Private Limited Partners . . . . . . . . . . . . . . . . . . . . 26
5.03.   Capital Contributions by Preferred Limited Partners . . . . . . . . . . . . . . . . . . . 26
5.04.   Capital Contributions by the General Partner . . . . . . . . . . . . . . . . . . . . . . . . 26
5.05.   Additional Private Limited Partners and Increased Commitments . . . . . . . . . . 27
5.06.   Conditions to the Commitments of the
        General Partner and the Private Limited Partners . . . . . . . . . . . . . . . . . . . . . 28

| | | |
|---|---|---|
| 5.07. | Termination of the Obligation to Contribute Capital | 28 |
| 5.08. | Notice and Opinion of Counsel | 29 |
| 5.09. | Cure, Termination of Capital Contributions and Withdrawal | 29 |
| 5.10. | Failure to Make Required Capital Contribution | 29 |
| 5.11. | Notice and Consent of SBA with Respect to Capital Contribution Defaults | 29 |
| 5.12. | Default Remedies | 30 |
| | (a) Interest on Overdue Contributions | 30 |
| | (b) Termination of Right to Make Further Capital Contributions | 31 |
| | (c) Forfeiture of Interest in the Partnership | 31 |
| | (d) Withholding and Application of Distributions | 32 |
| | (e) Required Sale of Interest in the Partnership | 32 |
| | (f) Acceleration | 34 |
| 6. | Adjustment of Capital Accounts | 34 |
| 6.01. | Establishment of Capital Accounts | 34 |
| 6.02. | Time of Adjustment of Capital Accounts | 34 |
| 6.03. | Allocations | 34 |
| | (a) General Allocations | 34 |
| | (b) Special Rules | 36 |
| | (c) Compliance with Code | 36 |
| 6.04. | Tax Matters | 37 |
| | (a) Qualified Income Offset | 37 |
| | (b) Section 704(c) Allocations | 37 |
| | (c) Tax Election Upon Transfer | 37 |
| | (d) Authority of General Partner to Vary Allocations to Preserve and Protect Partners' Intent | 38 |
| | (e) Tax Controversies | 39 |
| | (f) Proceedings | 39 |
| | (g) Promissory Note Income | 39 |
| 7. | Distributions | 39 |
| 7.01. | Distributions to Partners | 39 |
| 7.02. | Distributions of Noncash Assets in Kind | 41 |
| 7.03. | Apportionment of Distributions Among the General Partner and Private Limited Partners | 41 |
| 7.04. | Withholding | 42 |
| 7.05. | Distributions Violative of the Act Prohibited | 42 |
| 7.06. | Apportionment of Net Profits and Net Losses; Distributions in Respect of Interests Transferred | 42 |
| 7.07. | Cash Distributions to the General Partner | 43 |
| 8. | Dissolution, Liquidation, Winding Up and Withdrawal | 43 |
| 8.01. | Dissolution | 43 |
| 8.02. | Winding Up | 44 |
| 8.03. | Withdrawal of the General Partner | 45 |

10.11. Severability ................................................. 55
10.12. Entire Agreement ............................................. 55
10.13. Section Headings ............................................. 56
10.14. Right to Rely upon the Authority of General Partner .......... 56
10.15. Jurisdiction ................................................. 56
10.16. Description of Partnership ................................... 56
10.17. Written Consent ............................................. 56
10.18. Partition ................................................... 56

Schedule A       -   Partners and Commitments

Schedule A-1  -   Instrument of Admission or Increase in Commitment for a Preferred Limited
                         Partner

Exhibit A        -   Valuation Guidelines

Exhibit B        -   Demand Promissory Note

8.04.   Continuation of the Partnership After the Withdrawal of the General Partner . . 46
8.05.   Withdrawals of Capital . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
8.06.   Withdrawal by ERISA Regulated Pension Plans . . . . . . . . . . . . . . . . . . . . . 46
8.07.   Withdrawal by Government Plans Complying with State and Local Law . . . . . 46
8.08.   Withdrawal by Government Plans Complying with ERISA . . . . . . . . . . . . . . 46
8.09.   Withdrawal by Tax Exempt Private Limited Partners . . . . . . . . . . . . . . . . . . 47
8.10.   Withdrawal by Registered Investment Companies . . . . . . . . . . . . . . . . . . . . 47
8.11.   Distributions on Withdrawal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
8.12.   Liquidation of General Partner's Interest Upon Election
        of Private Limited Partners to Continue the Partnership . . . . . . . . . . . . . . . . 48

9.      Accounts, Reports and Auditors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
9.01.   Books of Account . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
        (a)   SBIC Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
        (b)   Records and Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
        (c)   Confidential Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
9.02.   Audit and Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
        (a)   Audit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
        (b)   Financial Statements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
        (c)   Income Tax Information . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
        (d)   Other Reports . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
9.03.   Fiscal Year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
9.04.   Banking and Portfolio Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
9.05.   Annual Meeting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

10.     Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
10.01.  Assignability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
        (a)   Private Limited Partner Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . 50
        (b)   SBA Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
        (c)   General Partner Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
        (d)   Conditions to Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51
        (e)   Substituted Private Limited Partners . . . . . . . . . . . . . . . . . . . . . . . 51
10.02.  Binding Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
10.03.  Gender . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
10.04.  Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
10.05.  Consents and Approvals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
10.06.  Counterparts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
10.07.  Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
        (a)   General Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
        (b)   Regulatory Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
10.08.  Private Limited Partner Consents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
10.09.  Power of Attorney . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
        (a)   Appointment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54
        (b)   Attributes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
10.10.  Applicable Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

"Affiliate" has the meaning stated in the SBIC Act.

"Affiliated Venture Capital Fund" means any entity commonly referred to as a venture capital or private equity fund managed or controlled by the General Partner to the extent that management or control is not contrary to the SBIC Act or in which any Principal participates as a general partner or as a general partner, officer, director, manager, or employee of a general partner or investment manager of any such venture capital or private equity fund.

"Agreement" means this agreement of limited partnership, as amended from time to time. References to this Agreement will be deemed to include all provisions incorporated in this Agreement by reference.

"Assets" means common and preferred stock (including warrants, rights and other options relating to such stock), notes, bonds, debentures, trust receipts and other obligations, instruments or evidences of indebtedness, and other properties or interests commonly regarded as securities, and in addition, interests in real property, whether improved or unimproved, and interests in personal property of all kinds (tangible or intangible), choses in action, and cash, bank deposits and so-called "money market instruments".

"Assets Under Management" means, as of any specified date, the value of all Assets owned by the Partnership (the value to be determined as provided in this Agreement), including contributions requested and due from Partners and uncalled amounts of Commitments that are included in the Partnership's Regulatory Capital, less the amount of any liabilities of the Partnership, determined in accordance with generally accepted accounting principles, consistently applied.

"Associate" has the meaning stated in the SBIC Act.

"Capital Account" means the account of each Partner that reflects its interest in the Partnership determined in accordance with Section 6.

"Capital Contribution" in respect of the General Partner means the amount of cash and any unpaid principal balance outstanding on any promissory note issued pursuant to Section 5.04 by the General Partner, as such, to the capital of the Partnership, and in respect of any other Partner means the amount of cash contributed by such Private Limited Partner, as such, to the capital of the Partnership.

"Certificate of Limited Partnership" means the certificate of limited partnership with respect to the Partnership filed for record in the office of the Secretary of State of Delaware.

"Charge" has the meaning stated in the SBIC Act.

## AGREEMENT OF LIMITED PARTNERSHIP OF
## ALTOTECH II, LP

This Agreement of Limited Partnership is dated and effective as of April 7, 2000, among **AltoTech Ventures LLC**, a Delaware limited liability company, in its capacity as a general partner (the "General Partner"), the individuals and entities whose names appear on *Exhibit A* as Private Limited Partners (collectively, the "Private Limited Partners"), the Preferred Limited Partner when admitted as provided in this Agreement and such other individuals and entities as shall become parties as hereinafter provided.

The parties, in consideration of their mutual agreements stated in this Agreement, agree to become partners and to form a limited partnership under the Act.

1.    General Provisions.

1.01.    Definitions.    For the purposes of this Agreement, the following terms have the following meanings:

"Accumulated Prioritized Payments" has the meaning stated in the SBIC Act.

"Act" means the Delaware Revised Uniform Limited Partnership Act as set forth in Title 6, Chapter 17 of the Delaware Code.

"Additional Private Limited Partners" has the meaning stated in Section 5.05.

"Adjusted Capital Contribution" means, as of any day, the aggregate Capital Contributions of a Partner, adjusted as follows:

(i)    Increased by the amount of any Partnership liabilities which, in connection with a distribution to a Partner (in his capacity as such) are (a) assumed by such Partner or (b) secured by any Partnership property distributed to such Partner.

(ii)    Reduced by the amount of cash and the gross asset value of any Partnership property distributed to or with respect to such Partner in his capacity as such.

In the event any Partner transfers all or any portion of his interest in accordance with the terms of this Agreement, such Partner's transferee shall succeed to such Partner's Adjusted Capital Contribution to the extent it relates to the transferred interest.

"Adjustments" has the meaning stated in the SBIC Act.

"Closing Capital Account" means, with respect to any fiscal period, the Opening Capital Account of each Partner for the fiscal period after allocations have been made to the Capital Account in accordance with Section 6.03.

"Code" means the Internal Revenue Code of 1986, as amended, and the regulations thereunder and interpretations thereof promulgated by the Internal Revenue Service, as in effect from time to time.

"Combined Capital" shall have the meaning set forth in the SBIC Act.

"Commencement Date" means the date on which the first Capital Contribution by a Private Limited Partner is made to the Partnership.

"Commitments" means the Capital Contributions to the Partnership that the Preferred Limited Partners have made and the Private Partners have made or are obligated to make to the Partnership. The amounts and terms of the Commitments of the General Partner, the Private Limited Partners, and the Preferred Limited Partners are set forth in this Agreement.

"Conflict Advisory Board" shall mean the Subadvisory Board selected by the General Partner and whose members shall perform the functions as set forth in Section 3.13.

"Control Person" has the meaning stated in the SBIC Act.

"Debentures" has the meaning stated in the SBIC Act.

"Designated Party" means any of the General Partner, any Investment Adviser/Manager, and any partner, member, manager, stockholder, director, officer, employee or Affiliate of the General Partner and any Investment Adviser/ Manager.

"Distributable Security" has the meaning stated in the SBIC Act.

"Earmarked Assets" has the meaning stated in the SBIC Act.

"Earned Prioritized Payments" has the meaning stated in the SBIC Act.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and the regulations thereunder and interpretations thereof promulgated by the Department of Labor, as in effect from time to time.

"General Partner" means the general partner or general partners of the Partnership, as set forth in this Agreement.

"Indemnifiable Costs" means all costs, expenses, damages, claims, liabilities, fines and judgments (including the reasonable cost of the defense, and any sums which may be paid with the consent of the Partnership in settlement), incurred in connection with or arising

from a claim, action, suit, proceeding or investigation, by or before any court or administrative or legislative body or authority.

"Investment Adviser/Manager" has the meaning stated in the SBIC Act and for the Partnership shall initially be AltoTech Management LLC.

"Investment Advisers Act" means the Investment Advisers Act of 1940, as amended, and the regulations thereunder and interpretations thereof promulgated by the SEC, as in effect from time to time.

"Investment Company Act" means the Investment Company Act of 1940, as amended, and the regulations thereunder and interpretations thereof promulgated by the SEC, as in effect from time to time.

"Leverage" has the meaning stated in the SBIC Act.

"Majority in Interest of the Private Limited Partners" means Private Limited Partners whose Capital Contributions aggregate in excess of fifty percent (50%) of the Capital Contributions of all Private Limited Partners.

"Management Compensation" means the amounts payable by the Partnership to the General Partner or Investment Adviser/Manager, as provided in Section 3.07.

"Management Expenses" shall have the meaning set forth in Section 3.09(a).

"Maximum Tax Liability" has the meaning stated in the SBIC Act.

"Net Losses" means, with respect to any fiscal period, the excess, if any, of:

        (i)     all expenses and losses incurred during the fiscal period by the Partnership from all sources over

        (ii)     the aggregate revenue, income and gains realized during the fiscal period by the Partnership from all sources.

For purposes of determining Net Losses:

        (A)     items will be taken into account to the extent that (1) they are includable as items of income, credit, loss or deduction for Federal income tax purposes (including items described in Section 705(a)(2)(B) of the Code, or treated as so described in Treasury Regulation §1.704-1(b)(2)(iv)(i)) or, (2) in the case of items of income, they constitute income that is exempt from Federal income tax;

(B)    and if any Noncash Asset is distributed in kind, it will be deemed sold at the value established at the most recent valuation of the Noncash Asset under this Agreement (or such other valuation date as is required under the SBIC Act) and any unrealized appreciation or depreciation with respect to the Noncash Asset will be deemed realized and included in the determination of Net Losses.

"Net Profits" means, with respect to any fiscal period, the excess, if any, of:

(i)    the aggregate revenue, income and gains realized during the fiscal period by the Partnership from all sources over

(ii)    all expenses and losses incurred during the fiscal period by the Partnership from all sources.

For purposes of determining Net Profits:

(A)    items will be taken into account to the extent that (1) they are includable as items of income, credit, loss or deduction for Federal income tax purposes (including items described in Section 705(a)(2)(B) of the Code, or treated as so described in Treasury Regulation §1.704-1(b)(2)(iv)(i)) or, (2) in the case of items of income, constitute income that is exempt from Federal income tax; and

(B)    if any Noncash Asset is distributed in kind, it will be deemed sold at the value established at the most recent valuation of the Noncash Asset under this Agreement (or such other valuation date as is required under the SBIC Act) and any unrealized appreciation or depreciation with respect to the Noncash Asset will be deemed realized and included in the determination of Net Profits.

"Noncash Asset" means any Asset of the Partnership other than cash.

"Opening Capital Account" with respect to any fiscal period, means:

(i)    with respect to any Partner admitted during the fiscal period, the Partner's initial Capital Contribution (or in the case of any Partner admitted as a transferee of all or part of the interest in the Partnership of another Partner, with respect to such transferred interest in the Partnership, that portion of the transferor's initial Capital Contribution transferred to the transferee); and

(ii)    with respect to any Partner admitted during any prior fiscal period (other than a Partner who has withdrawn as of the last day of the preceding fiscal period), the Partner's Closing Capital Account for the preceding fiscal period (or in the case of any Partner admitted as a transferee of all or part of the interest in the Partnership of another Partner, with respect to such transferred interest in the Partnership, that portion of the transferor's Closing Capital Account transferred to the transferee).

"Option Price" shall have the meaning set forth in Section 5.12(e).

"Optioned Partnership Interest" shall have the meaning set forth in Section 512.(e).

"Optionees" shall have the meaning set forth in Section 5.12(e).

"Optionor" shall have the meaning set forth in Section 5.12(e).

"Organization Expenses" means the fees, costs and expenses of and incidental to the formation of the Partnership and the General Partner and the licensing of the Partnership as an SBIC.

"Outstanding Leverage" means the total amount of outstanding securities (including, but not limited to, Debentures and Participating Securities) issued by the Partnership that qualify as Leverage and have not been redeemed or repaid as provided in the SBIC Act.

"Participating Security" has the meaning stated in the SBIC Act.

"Partners" means the General Partner, the Private Limited Partners and the Preferred Limited Partners, if any.

"Partnership" means the limited partnership established by this Agreement.

"Partnership Percentage" in respect of any Partner means that fraction, expressed as a percentage, having as its numerator the Capital Contribution of such Partner and having as its denominator the total Capital Contributions of all Partners.

"____percent (___%) in interest of the Private Limited Partners" means Private Limited Partners whose Capital Contributions represent such percentage of the Capital Contributions of all Private Limited Partners as of the time of determination.

"Portfolio Companies" means the issuers of Assets acquired by the Partnership, other than issuers of certificates of deposits, shares or other participations in mutual funds or similar money market type instruments, direct obligations of or obligations guaranteed as to principal and interest by the United States and repurchase agreements with federally insured institutions with respect to such obligations. Reference to a "Portfolio Company" is to any one of the Portfolio Companies.

"Portfolio Securities" means the Assets of the Portfolio Companies acquired by the Partnership. Reference to a "Portfolio Security" is to any one of the Portfolio Securities.

"Preferred Limited Partner" means SBA, in its capacity as the holder of a Preferred Limited Partnership Interest, or any successor in interest to SBA in its capacity as a Preferred Limited Partner.

"Preferred Limited Partnership Interest" means a preferred limited partnership interest in the Partnership which qualifies as a Participating Security.

"Principal" means Walter T.G. Lee, Gloria C. Wahl and Thanos Triant, so long as that individual is an employee of the Investment Adviser/Manager of the Partnership, and any other individual who the General Partner and a Majority in Interest of the Private Limited Partners designate as a Principal, so long as that individual is an employee of the Investment Adviser/Manager.

"Prioritized Payment" has the meaning stated in the SBIC Act.

"Private Capital" has the meaning stated in the SBIC Act.

"Private Limited Partners" means any limited partners of the Partnership other than any Preferred Limited Partner.

"Private Partners" means the General Partner and the Private Limited Partners.

"Profit Participation" has the meaning stated in the SBIC Act.

"Qualified Nonprivate Funds" has the meaning stated in the SBIC Act.

"Regulatory Capital" has the meaning stated in the SBIC Act.

"Remaining Portion" shall have the meaning set forth in Section 5.12(e).

"Retained Earnings Available for Distribution" has the meaning stated in the SBIC Act.

"SBA" means the United States Small Business Administration.

"SBA Agreements" has the meaning stated in Section 10.12.

"SBIC" means a small business investment company licensed under the SBIC Act.

"SBIC Act" means the Small Business Investment Act of 1958, as amended, and the rules and regulations thereunder and interpretations thereof promulgated by SBA, as in effect from time to time.

"SEC" means the Securities and Exchange Commission.

"Securities Act" means the Securities Act of 1933, as amended, and the regulations thereunder and interpretations thereof promulgated by the SEC, as in effect from time to time.

"Special Advisory Board" shall mean the Advisory Board selected by the General Partner and whose members shall perform the functions as set forth in Section 3.13.

"Special Private Limited Partner" has the meaning stated in Section 8.03(c).

1.02.   Name.

(a)    The name of the Partnership is AltoTech II, LP.

(b)    Subject to the prior approval of SBA, the General Partner has the power at any time to: (i) change the name of the Partnership; and (ii) qualify the Partnership to do business under any name when the Partnership's name is unavailable for use, or may not be used, in a particular jurisdiction.

(c)    The General Partner will give prompt notice of any action taken under this Section to each Partner and SBA.

1.03.   Principal Office; Registered Office; and Qualification.

(a)    The principal office of the Partnership will be at 2170 Stockbridge Avenue, Woodside, California 94062, or such other place as may from time to time be designated by the General Partner, subject to the approval of SBA.

(b)    The registered office of the Partnership in the State of Delaware will be located at 1201 Market Street, Suite 1600, Wilmington, Delaware 19801. The name of the registered agent for the Partnership will be PHS Corporate Services, Inc. The General Partner may from time to time change the registered agent and registered office of the Partnership.

(c)    The General Partner will qualify the Partnership to do business in each jurisdiction where the activities of the Partnership make such qualification necessary.

(d)    The General Partner will give prompt notice of any action taken under this Section 1.03 to each Partner and SBA.

1.04.   Commencement and Duration.

(a)    The Partnership will commence upon the filing for record of the Certificate of Limited Partnership.

(b)    The Partnership will be dissolved and wound up at the time and in the manner provided for in Article 8.

1.05.    Admission of Partners.

(a)    No person may be admitted as a General Partner or a Private Limited Partner without subscribing and delivering to the Partnership (i) a counterpart of this Agreement, or other written instrument, which sets forth: (A) the name and address of the Partner, (B) the Commitment of the Partner, and (C) the agreement of the Partner to be bound by the terms of this Agreement; and (ii) such other agreements and instruments as the General Partner requests.

(b)    Without the prior approval of SBA, no person may be admitted as: (i) a General Partner, or (ii) a Private Limited Partner with an ownership interest of ten percent (10%) or more of the Partnership's capital.

(c)    No one may be admitted as a Preferred Limited Partner without subscribing and delivering to the Partnership an executed Instrument of Admission substantially in the form of *Schedule A-1* attached to this Agreement.

(d)    The General Partner will compile, and amend from time to time as necessary, *Schedule A* attached to this Agreement, which will list: (i) the name and address of the General and each Private Limited Partner, and (ii) the Commitment of the General Partner and each Private Limited Partner to the Partnership.

(e)    The addition to the Partnership at any time of one or more Partners will not be a cause for dissolution of the Partnership, and all the Partners will continue to be subject to the provisions of this Agreement in all respects.

1.06.    Representations of Partners.

(a)    General Partner. This Agreement is made with the General Partner in reliance upon the General Partner's representation to the Partnership, each Preferred Limited Partner and SBA, that:

(i)    it is duly organized, validly existing and in good standing under the laws of the State of Delaware, and is qualified to do business under the laws of each state where such qualification is required to carry on the business of the Partnership;

(ii)    it has full power and authority to execute and deliver this Agreement and to act as General Partner under this Agreement;

(iii)    this Agreement has been authorized by all necessary actions by it, has been duly executed and delivered by it, and is a legal, valid and binding obligation of it, enforceable according to its terms; and

(iv)    the execution and delivery of this Agreement and the performance of its obligations under this Agreement will not conflict with, or result in any violation of, or default under, any provision of any governing instrument applicable to it, or any agreement or other instrument to which it is a party or by which it or any of its properties are bound, or any provision of law, statute, rule or regulation, or any ruling, writ, order, injunction or decree of any court, administrative agency or governmental body applicable to it.

(b)    Private Limited Partners. This Agreement is made with each Private Limited Partner in reliance upon each Private Limited Partner's representation to the General Partner, the Partnership, each Preferred Limited Partner and SBA, that:

(i)    it has full power and authority to execute and deliver this Agreement and to act as a Private Limited Partner under this Agreement; this Agreement has been authorized by all necessary actions by it; this Agreement has been duly executed and delivered by it; and this Agreement is a legal, valid and binding obligation of it, enforceable against it according to its terms;

(ii)    the execution and delivery of this Agreement and the performance of its obligations under this Agreement do not require the consent of any third party not previously obtained, and will not conflict with, or result in any violation of, or default under, any provision of any governing instrument applicable to it, or any agreement or other instrument to which it is a party or by which it or any of its properties are bound, or any provision of law, statute, rule or regulation, or any ruling, writ, order, injunction or decree of any court, administrative agency or governmental body applicable to it;

(iii)    if the Private Limited Partner is a bank (as the term is used in the SBIC Act, at 15 U.S.C. §682(b)), the total amount of such Private Limited Partner's investments in SBICs, including such Private Limited Partner's interest in the Partnership, does not exceed five percent (5%) of such Private Limited Partner's capital and surplus;

(iv)    unless otherwise disclosed to the Partnership in writing, the Partner is a citizen or resident of the United States, an entity organized under the laws of the United States or a state within the United States or an entity engaged in a trade or business within the United States; and

(v)    unless otherwise disclosed to the Partnership in writing, the Partner is not subject to Title I of ERISA.

(c)    Tax Information. Each Partner who has disclosed to the Partnership in writing that it is not a person described in Section 1.06(b)(iv) agrees to provide the Partnership with any information or documentation necessary to permit the Partnership to fulfill any tax withholding or other obligation relating to the Partner, including but not limited to any documentation necessary to establish the Partner's eligibility for benefits under any applicable tax treaty.

1.07.  Notices With Respect to Representations by Private Limited Partners.

(a)    If any representation made by a Private Limited Partner in Section 1.06(b)(i), (ii) or (iii) ceases to be true, then the Private Limited Partner will promptly provide the Partnership with a correct separate written representation as provided in each such Section.

(b)    The Partnership will give each Preferred Limited Partner and SBA prompt notice of any corrected representation received from any Private Limited Partner under Section 1.07(a).

1.08.  Liability of Partners.

(a)    The General Partner will not: (i) be obligated to restore by way of Capital Contribution or otherwise any deficits in the respective Capital Accounts of the Private Limited Partners or Preferred Limited Partners should such deficits occur, or (ii) have any greater obligation with respect to any Outstanding Leverage than is required by the SBIC Act or by SBA.

(b)    Except as otherwise provided under the Act, no Private Limited Partner will be liable for any loss, liability or expense whatsoever of the Partnership. Notwithstanding the preceding sentence, a Private Limited Partner will remain liable for any portion of such Private Limited Partner's Commitment not paid to the Partnership.

(c)    If a Private Limited Partner is required to return to the Partnership, for the benefit of creditors of the Partnership, amounts previously distributed to the Private Limited Partner, the obligation of the Private Limited Partner to return any such amount to the Partnership will be the obligation of the Private Limited Partner and not the obligation of the General Partner. No Private Limited Partner will be liable under this Agreement for the obligations under this Agreement of any other Partner.

(d)    Nothing in this Agreement limits any liability of any Partner under any agreement between the Partner and SBA.

1.09.  Repayment of Capital Contributions of Partners. Except as expressly provided in this Agreement, no specific time has been agreed upon for the repayment of the Capital Contributions of the Partners, and no Partner, or any successor-in-interest, shall have a right to withdraw any capital contributed to the Partnership.

1.10.  No Priorities of Limited Partners. Except as expressly provided in this Agreement or the SBIC Act, no Private Limited Partner shall have the right to demand or receive property other than cash in return for its Capital Contribution, nor shall any Private Limited Partner have priority over any other Partner either as to the return of its Capital Contribution or as to profits, losses or distributions.

2.    Purpose and Powers.

2.01.    Purpose and Powers.

(a)    The Partnership is being organized solely for the purpose of operating as a venture capital fund. The Partnership shall apply to the SBA for a license to operate as an SBIC under the SBIC Act. Prior to such license being granted and if such license is granted, the Partnership shall (i) conduct only the activities described under Title III of the SBIC Act, and (ii) have the powers, responsibilities, and be subject to the limitations, provided in the SBIC Act. If, however, for any reason the Partnership is unsuccessful in its application for an SBIC license or the Partnership withdraws its application for an SBIC license, the Partnership will proceed to carry out its purpose as a non-SBIC venture capital fund, and all references in this Agreement to the SBA, SBIC Act, Preferred Limited Partner and other terms and provisions relating to the Partnership as an SBIC shall no longer be applicable.

(b)    Subject to Section 2.01(a), the Partnership may make, manage, own and supervise investments of every kind and character in conducting its business.

(c)    Subject to the provisions of the SBIC Act, the Partnership has all powers necessary, suitable or convenient for the accomplishment of the purposes set forth in Sections 2.01(a) and (b), alone or with others, as principal or agent, and can engage in any lawful act or activity for which limited partnerships may be organized under the Act.

2.02.    Restrictions on Powers.    Notwithstanding any provision of Section 2.01, the Partnership will not:

(i)    acquire hedges, make short sales, purchase puts or calls or enter into straddles;

(ii)    lend any assets of the Partnership to or guarantee any obligations of the General Partner, the Investment Adviser/Manager, or any director, officer, partner, stockholder, employee or Affiliate of the General Partner or the Investment Adviser/Manager (excluding any Portfolio Company);

(iii)    allow any assets of the Partnership to become commingled with the assets of the General Partner or the Investment Adviser/Manager, or any director, officer, partner, stockholder, employee or Affiliate of the General Partner or the Investment Adviser/Manager;

(iv)    invest at any time in Portfolio Securities if at the time of such investment the aggregate cost of (A) the investments of the Partnership in a Portfolio Company and its Affiliates plus (B) such additional investment would exceed: if the Partnership is an SBIC, the greater of (x) twenty percent (20%) of the Partnership's Regulatory Capital or (y) such other amount as the SBA shall permit in order to protect the Partnership's investment;

(v)    if the Partnership is an SBIC, invest at any time in Portfolio Securities issued by any company in which an SBIC is prohibited from investing by the SBIC Act;

(vi)    borrow, guarantee the obligations of others or otherwise incur indebtedness if any such borrowings, guarantees or other indebtedness shall create Private Limited Partner liability, other than the obligation to make Capital Contributions pursuant to the Commitment of the Private Limited Partner; or

(vii)    if the Partnership is an SBIC, have outstanding any debt in an amount in excess of the maximum amount of debt permitted under the SBIC Act.

2.03.  Unrelated Business Taxable Income.  The Partnership will use reasonable efforts to ensure that no Partner (or any limited partner or member of a Partner) exempt from income taxation under Sections 501(a) or 501(c)(3) of the Code will be deemed to have "unrelated business taxable income" (as that term is defined in Section 512 of the Code) as a result of the activities of the Partnership.

2.04.  Venture Capital Operating Company.  At any time that a Private Limited Partner is subject to Title I of ERISA and 25% or more in interest of all Private Limited Partners (as measured by their aggregate Capital Accounts) are "benefit plan investors" (within the meaning of Department of Labor Regulation §2510.3-101(f)(2), 51 Fed. Reg. 41,282 (November 13, 1986) or any amendment or successor regulation), the Partnership will use reasonable efforts to ensure that the Partnership qualifies as a "venture capital operating company" (within the meaning of Department of Labor Regulation §2510.3-101(d), 51 Fed. Reg. 41,281 (November 13, 1986) or any amendment or successor regulation). Subject to SBA approval if and to the extent required, the General Partner shall have the authority to take any action it deems necessary in order to implement this Section 2.04. Such authority shall include, but shall not be limited to, the authority to prevent any Private Limited Partner from acquiring or disposing of an interest under the Agreement in such a way as to cause the assets of the Partnership to be deemed to be assets of a "benefit plan investor" or to delay the Capital Contribution of any Private Limited Partner.

3.    Management.

3.01.  Authority of General Partner.

(a)    The management and operation of the Partnership and the formulation of investment policy is vested exclusively in the General Partner, which shall have the rights and powers which may be possessed by a general partner under the Act, and such rights and powers as are otherwise conferred by law and are necessary, advisable or convenient to the discharge of its duties under this Agreement and to the management of the operations and affairs of the Partnership. The General Partner is expressly authorized to make any election or take any other action on behalf of the Partnership permitted under the Code with respect to the election of tax classification.

(b)    The act of the General Partner in carrying on the business of the Partnership will bind the Partnership.

(c)    In the case of any General Partner other than a natural person, at any time that the Partnership is licensed as an SBIC, the General Partner will not allow any natural person to serve as a general partner, director, officer or manager of the General Partner, unless such person has been approved by SBA.

(d)    So long as the General Partner remains the general partner of the Partnership and so long as the Partnership is licensed as an SBIC:

(i)    it will comply with the requirements of the SBIC Act, including, without limitation, 13 C.F.R. §107.160(a) and (b), as in effect from time to time; and

(ii)    in the case of any General Partner other than a natural person, except as set forth in Section 3.01(d)(iii), it will devote all of its activities to the conduct of the business of the Partnership and will not engage actively in any other business, unless its engagement is related to and in furtherance of the affairs of the Partnership.

(iii)    The General Partner may, however:

(A)    act as the general partner or Investment Adviser/Manager for one or more other SBICs; and

(B)    receive, hold, manage and sell Assets received by it from the Partnership (or other SBIC for which it acts as general partner or Investment Adviser/Manager), or through the exercise or exchange of Assets received by it from the Partnership (or other SBIC for which it acts as general partner or Investment Adviser/Manager).

3.02.    Authority of the Private Limited Partners. No Private Limited Partner shall take part in the control or management of the business or affairs of the Partnership, and no Private Limited Partner shall have any authority to act for or on behalf of the Partnership or to vote on any matter relative to the Partnership and its affairs except as is specifically permitted by this Agreement. No Private Limited Partner that is subject to the Bank Holding Company Act of 1956, as amended, will have the right to vote on any matter for so long as such right to vote, in the opinion of counsel to such Private Limited Partner, would be inconsistent with the requirements of such act, or any rules or regulations promulgated thereunder. A Private Limited Partner or an employee, agent, member, director or officer of a Private Limited Partner also may be an employee, agent, member, director or officer of the Partnership, the General Partner or the Investment Adviser/Manager. The existence of these relationships and acting in such capacities will not result in a Private Limited Partner's being deemed to be participating in the control of the business of the Partnership or otherwise affect the liability of the Private Limited Partner or the person so acting.

3.03.    Authority of the Preferred Limited Partners. The Preferred Limited Partners will take no part in the control of the business of the Partnership, and the Preferred Limited

Partners will not have any authority to act for or on behalf of the Partnership except as is specifically permitted by this Agreement.

### 3.04.   Acknowledgment of SBA Authority.

(a)   The Partners acknowledge that, in addition to the rights of SBA under this Agreement in SBA's capacity as a Preferred Limited Partner, SBA also has regulatory authority over the Partnership as a licensed small business investment company under the provisions of the SBIC Act. SBA exercises its regulatory authority over the Partnership under the SBIC Act independent of and separate from its rights and actions in its capacity as a Preferred Limited Partner, and actions taken by SBA under its regulatory authority will not be deemed to be actions taken in SBA's capacity as a Preferred Limited Partner of the Partnership.

(b)   The Partners acknowledge that in addition to the rights of SBA under this Agreement in SBA's capacity as a Preferred Limited Partner, SBA may also have additional rights with respect to the Partnership and any Partner or Partners under separate agreements between SBA and the Partnership or such Partner or Partners. The exercise of rights by SBA under any such other agreement will not be deemed to be actions taken by SBA in its capacity as a Preferred Limited Partner of the Partnership unless the other agreement expressly so provides.

### 3.05.   The Investment Adviser/Manager.

(a)   Subject to the SBIC Act, the General Partner may delegate any part of its authority to an Investment Adviser/Manager, including but not limited to entering into an agreement on behalf of the Partnership with an Investment Adviser/Manager for the provision of management services.

(b)   Any agreement delegating any part of the authority of the General Partner to an Investment Adviser/Manager will: (i) be in writing, executed by the Partnership and the Investment Adviser/Manager, (ii) specify the authority so delegated, and (iii) expressly require that such delegated authority will be exercised by the Investment Adviser/Manager in conformity with the terms and conditions of such agreement, this Agreement and the SBIC Act.

(c)   Each agreement with an Investment Adviser/Manager, and any material amendment to any such agreement, is subject to the prior approval of SBA.

(d)   Allegro Management LLC is the initial Investment Adviser/Manager.

### 3.06.   Restrictions on Other Activities of the General Partner and its Affiliates.

(a)   Except as provided in the SBIC Act and as otherwise specifically provided in this Agreement, no provision of this Agreement will be construed to

preclude any (i) Partner, (ii) Investment Adviser/Manager, or (iii) Affiliate, general partner, member, manager or stockholder of any Partner or Investment Adviser/Manager, from engaging in any activity whatsoever or from receiving compensation therefor or profit from any such activity. Such activities may include, without limitation, (A) receiving compensation from issuers of securities for investment banking services, (B) managing investments, (C) participating in investments, brokerage or consulting arrangements or (D) acting as an adviser to or participant in any corporation, partnership, limited liability company, trust or other business person.

(b)    Except as provided in the SBIC Act, the General Partner's Affiliates, each for its own account or for others (other than any Affiliated Venture Capital Fund), may not purchase participations of any amount in Portfolio Companies so long as the General Partner is the general partner of the Partnership; provided, however, that, subject to the SBIC Act, the General Partner's Affiliates each may make purchases and sales for its own account of publicly-held securities in the open market and may invest in or finance a Portfolio Company if the Partnership is securing or has previously secured its desired investment position in that company. Except as set forth in this Section 10.02, the General Partner's Affiliates each may, subject to the SBIC Act, make other investments of every type and nature for itself or for the account of others without offering the Partnership a participation in such investments and without the Partnership or any Partner becoming entitled by virtue of this Agreement to any interest therein or to the profits or income derived therefrom. Subject to the limitations contained herein, all the foregoing shall be in the sole and absolute discretion of the General Partner and without liability to the Partnership or the Private Limited Partners (including the Preferred Limited Partner).

3.07.    Management Compensation.

(a)    As compensation ("Management Compensation") for services rendered in the management of the Partnership, during the term of the Partnership, beginning on the Commencement Date, the Partnership will pay an annual management fee computed on a daily basis equal to 2.5% multiplied by:

(i)    during the first five (5) years following the Commencement Date, three (3) times the amount of the Partnership's Regulatory Capital; and

(ii)    after the fifth anniversary of the Commencement Date, the Partnership's Combined Capital.

If the Partnership is not licensed as an SBIC, Management Compensation shall equal 2.5% multiplied by the aggregate Commitments of the Private Partners. If three times the amount of the Partnership's Regulatory Capital is less than $20 million for any period for which the Management Compensation is payable pursuant to clause (a) of Section 3.07(a)(i) or if the Partnership's Combined Capital is less than $20 million for any period for which the Management Compensation is payable pursuant to Section 3.07(a)(ii), then the amount of Management Compensation shall be increased by $125,000 per year, adjusted for the length of the period.

(b)     The Management Compensation will be paid by the Partnership to the General Partner or, at the General Partner's direction, in whole or in part to an Investment Adviser/Manager.

(c)     The Partnership will not pay any Management Compensation with respect to any fiscal year in excess of the amount of Management Compensation approved by SBA.

3.08.   Payment of Management Compensation. Management Compensation will be paid in advance on the first day of each fiscal quarter or a portion thereof in cash. If the Management Compensation payable for a fiscal quarter or other period calculated as provided in Section 3.07(a) is greater than the amount paid at the beginning of that fiscal quarter or period, the additional Management Compensation owed shall be paid then at the beginning of the next fiscal quarter. If the Management Compensation payable for a fiscal quarter or other period calculated as provided in Section 3.07(a) is less than the amount paid at the beginning of that fiscal quarter or period, then Management Compensation payable for the following fiscal quarter or period shall be reduced by the amount of the overpayment or, if the Partnership will be wound up and liquidated by the end of such fiscal quarter or other period, the overpayment shall be repaid by the recipient to the Partnership.

3.09.   Partnership Expenses.

(a)     The entity entitled to receive Management Compensation will be responsible for the payment of the following expenses ("Management Expenses"):  the Partnership's normal operating expenses, including compensation and fringe benefits, services, rent, utilities and other overhead charges; expenses for business development, travel and entertainment incurred in connection with the affairs of the Partnership; insurance premiums and fees (excluding directors and officers liability insurance); telephone, telegram, cablegram, telegraph, facsimile, Internet and similar charges; postage expenses; dues, subscriptions, office supplies, equipment rental and similar expenses; fees for bookkeeping and other similar services relating to the affairs of the Partnership, the General Partner and the Investment Adviser/Manager, and other routine expenses incurred in connection with their affairs.  Management Expenses shall not include the expenses borne by the Partnership and described in Section 3.09(b).

(b)     The Partnership will pay the following Partnership expenses: the accounting fees, costs and expenses of the Partnership, including without limitation, the annual audit of the Partnership, the preparation of the annual and any interim financial statements of the Partnership and the Federal and state tax returns of the Partnership; examination fees payable to SBA; taxes payable by the Partnership; Management Compensation; costs and expenses associated with meetings of the Private Limited Partners of the Partnership, communications with Private Limited Partners and preparation of Partnership status reports; costs and expenses associated with informal meetings of Private Limited Partners with the General Partner and of committees and advisory boards of the Partnership; the costs and expenses of the Advisory Board; the legal fees, cost and expenses of counsel for the Partnership in any legal action or proceeding, including threatened action, proceeding or investigation, and the amount of any judgments or settlements paid in

connection with such action, proceeding or investigation; the legal and other fees, costs and expenses of and incidental to the purchase and sale (including qualification and registration) of Portfolio Securities to the extent that such fees, costs and expenses are not paid by Portfolio Companies or others; all other legal fees, costs and expenses incident to the Partnership, its formation, its management and activities; Organization Expenses not to exceed $200,000; interest and other expenses relating to any Partnership indebtedness; dues payable to trade associations including the National Association of Small Business Investments Companies; bonding expenses; premiums for insurance protecting the Partnership and the partners and employees of the General Partner, the Corporate General Partner, the Management Company and the Partnership and other persons entitled to indemnification from the Partnership from liabilities to third parties for activities on behalf of the Partnership; fees incurred by the Partnership for special advisory or consulting services; securities filing fees; SBA commitment, reservation, custodian and other fees; fees and expenses incurred in connection with reserving, using or repaying SBA Leverage; and all extraordinary fees, costs and expenses.

(c)     All Partnership expenses paid by the Partnership will be made against appropriate supporting documentation. The payment by the Partnership of Partnership expenses will be due and payable as billed.

3.10.   Valuation of Assets.

(a)     The Partnership will adopt written guidelines for determining the value of its Assets. Assets held by the Partnership will be valued by the General Partner in a manner consistent with the Partnership's written guidelines and the SBIC Act. The Valuation Guidelines attached to this Agreement as *Exhibit A* are the Partnership's written guidelines for valuation.

(b)     To the extent that the SBIC Act requires any Asset held by the Partnership to be valued other than as provided in this Agreement, the General Partner will value the Asset in such manner as it determines to be consistent with the SBIC Act.

(c)     Assets held by the Partnership will be valued at least annually (or more often, as SBA may require or as required by this Agreement or the Act), and will be valued at least semi-annually (or more often, as SBA may require) at any time that the Partnership has Outstanding Leverage.

(d)     In determining the value of the interest of any Partner in the Partnership, or in any accounting among the Partners or any of them, no value shall be placed on the goodwill or name of the Partnership. No tax reserves shall be set up for unrealized gains or profits unless the tax obligations of the Partnership are established by law.

3.11.   Standard of Care.

(a)     No Designated Party will be liable to the Partnership or any Partner for any action taken or omitted to be taken by it or any other Partner or other person in good

faith and in a manner it reasonably believed to be in or not opposed to the best interests of the Partnership; and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful.

(b)    Neither any Private Limited Partner, nor any member of any Partnership committee or board who is not an Affiliate of the General Partner, will be liable to the Partnership or any Partner as the result of any decision made in good faith by the Private Limited Partner or member, in its capacity as such.

(c)    Any Designated Party, any Private Limited Partner and any member of a Partnership committee or board, may consult with independent legal counsel selected by it and will be fully protected, and will incur no liability to the Partnership or any Partner, in acting or refraining to act in good faith in reliance upon the opinion or advice of such counsel.

(d)    This Section does not constitute a modification, limitation or waiver of Section 314(b) of the SBIC Act, or a waiver by SBA of any of its rights under Section 314(b).

(e)    In addition to the standards of care stated in this Section, this Agreement may also provide for additional (but not alternative) standards of care that must also be met.

### 3.12. Indemnification.

(a)    The Partnership will indemnify and hold harmless, but only to the extent of Assets Under Management (less any Outstanding Leverage not included as a liability in the computation of Assets Under Management), any Designated Party, from any and all Indemnifiable Costs which may be incurred by or asserted against such person or entity, by reason of any action taken or omitted to be taken on behalf of the Partnership and in furtherance of its interests.

(b)    The Partnership will indemnify and hold harmless, but only to the extent of Assets Under Management (less any Outstanding Leverage not included as a liability in the computation of Assets Under Management), the Private Limited Partners, and members of any Partnership committee or board who are not Affiliates of the General Partner or any Investment Adviser/Manager from any and all Indemnifiable Costs which may be incurred by or asserted against such person or entity, by any third party on account of any matter or transaction of the Partnership, which matter or transaction occurred during the time that such person has been a Private Limited Partner or member of any Partnership committee or board.

(c)    The Partnership has power, in the discretion of the General Partner, to agree to indemnify on the same terms and conditions applicable to persons indemnified under Section 3.12(b), any person who is or was serving, under a prior written request from the Partnership, as a consultant to, agent for or representative of the Partnership as a director, manager, officer, employee, agent of or consultant to another corporation, partnership, limited liability

company, joint venture, trust or other enterprise, against any liability asserted against such person and incurred by the person in any such capacity, or arising out of the person's status as such.

(d)     No person may be entitled to claim any indemnity or reimbursement under Section 3.12(a), (b) or (c) in respect of any Indemnifiable Cost that may be incurred by such person which results from the failure of the person to act in accordance with the provisions of this Agreement and the applicable standard of care stated in Section 3.11. The termination of any action, suit or proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, will not, of itself, preclude a determination that such person acted in accordance with the applicable standard of care stated in Section 3.11.

(e)     To the extent that a person claiming indemnification under Section 3.12(a), (b) or (c) has been successful on the merits in defense of any action, suit or proceeding referred to in Section 3.12(a), (b) or (c) or in defense of any claim, issue or matter in any such action, suit or proceeding, such person must be indemnified with respect to such matter as provided in such Section. Except as provided in the foregoing sentence and as provided in Section 3.18(h) with respect to advance payments, any indemnification under this Section 3.12 will be paid only upon determination that the person to be indemnified has met the applicable standard of conduct stated in Section 3.11(a) or (b).

(f)     A determination that a person to be indemnified under this Section 3.12 has met the applicable standard stated in Section 3.11(a) or (b) may be made by (i) the General Partner, with respect to the indemnification of any person other than a person claiming indemnification under Section 3.12(a), (ii) a committee of the Partnership whose members are not affiliated with the General Partner or any Investment Adviser/Manager with respect to indemnification of any person indemnified under Section 3.12(a) or (iii) at the election of the General Partner, independent legal counsel selected by the General Partner, with respect to the indemnification of any person indemnified under this Section, in a written opinion.

(g)     In making any determination with respect to indemnification under Section 3.12(f), the General Partner, a committee of the Partnership whose members are not affiliated with the General Partner or any Investment Adviser/Manager or independent legal counsel, as the case may be, is authorized to make the determination on the basis of its evaluation of the records of the General Partner, the Partnership or any Investment Adviser/Manager to the Partnership and of the statements of the party seeking indemnification with respect to the matter in question and is not required to perform any independent investigation in connection with any determination. Any party making any such determination is authorized, however, in its sole discretion, to take such other actions (including engaging counsel) as it deems advisable in making the determination.

(h)     Expenses incurred by any person in respect of any Indemnifiable Cost may be paid by the Partnership before the final disposition of any such claim or action upon receipt of an undertaking by or on behalf of such person to repay such amount unless it is ultimately determined as provided in Section 3.12(e) or 3.12(f) that the person is entitled to be indemnified by the Partnership as authorized in this Section.

(i)    The rights provided by this Section will inure to the benefit of the heirs, executors, administrators, successors, and assigns of each person eligible for indemnification under this Agreement.

(j)    The rights to indemnification provided in this Section are the exclusive rights of all Partners to indemnification by the Partnership. No Partner may have any other rights to indemnification from the Partnership or enter into, or make any claim under, any other agreement with the Partnership (whether direct or indirect) providing for indemnification.

(k)    The Partnership may not enter into any agreement with any person (including, without limitation, any Investment Advisor/Manager, Partner or any person that is an employee, officer, director, partner or shareholder, or an Affiliate, Associate or Control Person of any Partner) providing for indemnification of any such person (i) except as provided for under this Section, and (ii) unless such agreement provides for a determination with respect to the indemnification as provided under Section 3.12(f).

(l)    The provisions of this Section do not apply to indemnification of any person that is not at the expense (whether in whole or in part) of the Partnership.

(m)    The Partnership may purchase and maintain insurance on its own behalf, or on behalf of any person or entity, with respect to liabilities of the types described in this Section. The Partnership may purchase such insurance regardless of whether the person is acting in a capacity described in this Section or whether the Partnership would have the power to indemnify the person against such liability under the provisions of this Section.

3.13.    Special Advisory Board and Conflict Advisory Board. The General Partner shall appoint a Special Advisory Board made up of between two and five persons. The duties of the Special Advisory Board will include: (i) consultation and advice concerning the Partnership's investment strategy; (ii) discussions concerning potential conflicts of interest, including, but without limitation, those involving other investments made by the Principals, the General Partner or its Affiliates; (iii) referral of investment opportunities to the Partnership; (iv) such other advice and counsel as is requested by the General Partner in connection with the Partnership's investments and other Partnership matters; (v) referral of individuals to serve as directors of Portfolio Companies; and (vi) taking any other action delegated to it pursuant to this Agreement. The Conflict Advisory Board will be made up of at least two Private Limited Partners chosen by the General Partner. The duties of the Conflict Advisory Board will include: (i) serving as the committee referenced in Sections 3.12(f) and 3.12(g), but no member of the Conflict Advisory Board that is a representative or affiliate of the person seeking to be indemnified shall participate in such function; (ii) making decisions with respect to conflicts of interest involving the Partnership or the General Partner and its Affiliates; and (iii) taking any other action delegated to it pursuant to this Agreement. The Special Advisory Board will meet not less frequently than annually. The Conflict Advisory Board will meet as required. All actions, consents or approvals by the Special Advisory Board and the Conflict Advisory Board shall require the vote of a majority of its members serving at the time such action, consent or approval is to be taken regardless of the number attending a meeting,

4.    Small Business Investment Company Matters.

4.01.    SBIC Act. The provisions of this Agreement must be interpreted to the fullest extent possible in a manner consistent with the SBIC Act. If any provision of this Agreement conflicts with any provision of the SBIC Act (including, without limitation, any conflict with respect to the rights of SBA or the respective Partners under this Agreement), the provisions of the SBIC Act will control.

4.02.    Consent or Approval of, and Notice to, SBA.

(a)    The requirements of the prior consent or approval of, and notice to, SBA in this Agreement will be in effect at any time that the Partnership is licensed as an SBIC, has Outstanding Leverage or owns Earmarked Assets. These requirements will not be in effect if the Partnership is not licensed as an SBIC, does not have any Outstanding Leverage, and does not own any Earmarked Assets.

(b)    Except as provided in the SBIC Act, a consent or approval required to be given by SBA under this Agreement will be deemed given and effective for purposes of this Agreement only if the consent or approval is:

(i)    given by SBA in writing; and

(ii)    delivered by SBA to the party requesting the consent or approval in the manner provided for notices to such party under Section 10.04.

4.03.    Provisions Required by the SBIC Act for Issuers of Participating Securities.

(a)    The provisions of 13 C.F.R. §107.1820 are incorporated by reference in this Agreement as if fully stated in this Agreement.

(b)    The Partnership and the Partners consent to the exercise by SBA of all of the rights of SBA under 13 C.F.R. §107.1820, and agree to take all actions that SBA may require in accordance with 13 C.F.R. §107.1820.

(c)    This Section 4.03 will be in effect at any time that the Partnership has outstanding Participating Securities or owns Earmarked Assets, and will not be in effect at any time that the Partnership neither has outstanding Participating Securities nor owns Earmarked Assets.

(d)    Nothing in this Section 4.03 may be construed to limit the ability or authority of SBA to exercise its regulatory authority over the Partnership as a licensed small business investment company under the SBIC Act.

4.04.   Provisions Required by the SBIC Act for Issuers of Debentures.

(a)   The provisions of 13 C.F.R. §107.1810(i) are incorporated by reference in this Agreement as if fully stated in this Agreement.

(b)   The Partnership and the Partners consent to the exercise by SBA of all of the rights of SBA under 13 C.F.R. §107.1810(i), and agree to take all actions that SBA may require in accordance with 13 C.F.R. §107.1810(i).

(c)   This Section 4.04 will be in effect at any time that the Partnership has outstanding Debentures, and will not be in effect at any time that the Partnership does not have outstanding Debentures.

(d)   Nothing in this Section 4.04 may be construed to limit the ability or authority of SBA to exercise its regulatory authority over the Partnership as a licensed small business investment company under the SBIC Act.

4.05.   Effective Date of Incorporated SBIC Act Provisions.

(a)   Any section of this Agreement which relates to Participating Securities or Debentures issued by the Partnership and incorporates or refers to the SBIC Act or any provision of the SBIC Act (including, without limitation, 13 C.F.R. §§107.1810(i), 107.1820, and 107.1830-107.1850) will, with respect to each Participating Security or Debenture, be deemed to refer to the SBIC Act or such SBIC Act provision as in effect on the date on which the Capital Contribution with respect to the Participating Security was made to the Partnership or the Debenture was purchased from the Partnership, as the case may be.

(b)   Section 4.05(a) will not be construed to apply to:

(i)   the provisions of the SBIC Act which relate to the regulatory authority of SBA under the SBIC Act over the Partnership as a licensed small business investment company; or

(ii)   the rights of SBA under any other agreement between the Partnership and SBA.

(c)   The parties acknowledge that references in this Agreement to the provisions of the SBIC Act relating to SBA's regulatory authority refer to the provisions as in effect from time to time.

4.06.   Admission of Preferred Limited Partners and Increased Commitments. The Partnership may, from time to time after the date of this Agreement, admit one or more Preferred Limited Partners under the following terms and conditions:

(a)    Each Preferred Limited Partner must execute and deliver to the Partnership an instrument substantially in the form attached to this Agreement as *Schedule A-1*, or other form satisfactory to the Partnership and the Preferred Limited Partner, evidencing the Preferred Limited Partner's agreement to be bound by and comply with the terms and provisions of this Agreement as if the Preferred Limited Partner were an original signatory to this Agreement, and setting forth the Preferred Limited Partner's name and Commitment.

(b)    Each Preferred Limited Partner will be admitted to the Partnership as of the date that the first such instrument is executed by the Preferred Limited Partner and the General Partner. Each Preferred Limited Partner must pay, on the date of its admission to the Partnership, a Capital Contribution equal to 100% of the amount of its Commitment as of such date.

(c)    At the time that any Preferred Limited Partner increases its Commitment, it must execute an instrument as provided in Section 4.06(a) setting forth the amount of such increase in its Commitment. Each Preferred Limited Partner must pay, on the date it increases its Commitment, a Capital Contribution equal to 100% of the amount of such increase in its Commitment.

(d)    The amount of any user, commitment or other fees deducted by SBA from the proceeds of any Preferred Limited Partnership interest issued by the Partnership will be deemed a Capital Contribution to the Partnership by such Preferred Limited Partner.

4.07.    Redemption and Withdrawal of Preferred Limited Partners.

(a)    The redemption of the Preferred Limited Partnership Interest under the SBIC Act will not cause the withdrawal of the Preferred Limited Partner from the Partnership, and any Preferred Limited Partner whose Preferred Limited Partnership Interest is redeemed under the SBIC Act will remain a Preferred Limited Partner of the Partnership notwithstanding the redemption, until such time as the Preferred Limited Partner is deemed to have withdrawn under Section 4.07(d).

(b)    If before the redemption date of a Preferred Limited Partnership Interest under the SBIC Act the Preferred Limited Partner has not received on a cumulative basis the amount provided under the SBIC Act with respect to such Preferred Limited Partnership Interest, then on the redemption date the Partnership will distribute to the Preferred Limited Partner such amount as is required so that as of the redemption date the Preferred Limited Partner has received on a cumulative basis the amount provided under the SBIC Act with respect to the Preferred Limited Partnership Interest.

(c)    If at the time any Preferred Limited Partner's Preferred Limited Partnership Interest has been redeemed under the SBIC Act the Partnership has not (i) paid all Earned Prioritized Payments, earned Adjustments and earned Charges in full, and (ii) sold or otherwise disposed of all assets which are Earmarked Assets, then the Partnership's obligation to pay Earned Prioritized Payments, earned Adjustments and earned Charges will continue and payment

will be made as provided in the SBIC Act. The Partnership's obligation to pay the Profit Participation with respect to Earmarked Assets will continue until such time as all Earmarked Assets are disposed of. If on disposition of all Earmarked Assets there remain any Accumulated Prioritized Payments, unearned Adjustments and unearned Charges, the obligation to make such payments will be extinguished.

(d)    A Preferred Limited Partner will be deemed to have withdrawn from the Partnership at such time as the Preferred Limited Partnership Interest of the Preferred Limited Partner has been redeemed under the SBIC Act, the Partnership no longer owns any assets which are Earmarked Assets, and all amounts due from the Partnership to the Preferred Limited Partner with respect to its Preferred Limited Partnership Interest (including, without limitation, all allocated Profit Participation) have been paid to the Preferred Limited Partner or the obligation to pay such amounts has been extinguished as provided in Section 4.07(c) or the SBIC Act.

4.08.    Assignment of Right to Distributions by a Preferred Limited Partner. A Preferred Limited Partner may assign to a designee all or part of its right to receive any distribution or payment from the Partnership with respect to its Preferred Limited Partnership Interest. Upon receipt of written notice from the Preferred Limited Partner as to such an assignment, the Partnership will pay any such assigned distribution or payment directly to the designee. Any assignment made solely under this Section 4.08 will not be deemed an assignment of a partnership interest or the substitution of a designee as a Partner, and will not be deemed to give the designee any rights or interest in the Partnership as a Partner in the Partnership.

4.09.    Priority of Preferred Limited Partnership Interests on Liquidation. If the Partnership is liquidated under the SBIC Act, the Preferred Limited Partnership Interests will be senior in priority for all purposes to all other partnership interests (or other equity interests) in the Partnership to the extent of the amount determined, with respect to each Preferred Limited Partnership Interest, as provided in the SBIC Act.

4.10.    SBA as Third Party Beneficiary. SBA will be deemed an express third party beneficiary of the provisions of this Agreement to the extent of the rights of the Preferred Limited Partners and SBA under this Agreement and under the Act. SBA will be entitled to enforce the provisions (including, without limitation, the obligations of each Partner to make Capital Contributions to the Partnership) for the benefit of the Preferred Limited Partners and for its benefit, as if SBA were a party to this Agreement.

5.    Partners' Capital Contributions.

5.01.    Capital Commitments.

(a)    The Private Limited Partners and the General Partner commit to make Capital Contributions to the Partnership in the amounts of the Commitments set forth by their respective names on *Schedule A* attached to this Agreement, as amended from time to time.

(b)    The Commitment of a Preferred Limited Partner includes only the amount the Preferred Limited Partner has actually contributed to the Partnership, and does not include any amount under any agreement by the Preferred Limited Partner or SBA to provide Leverage to the Partnership that has not been contributed to the Partnership. The amount of the actual contribution by a Preferred Limited Partner to the Partnership will be set forth on *Schedule A-1* attached to this Agreement.

5.02.    Capital Contributions by Private Limited Partners.

(a)    All Capital Contributions to the Partnership by Private Limited Partners must be in cash, except as provided in this Agreement and approved by SBA.

(b)    Each Private Limited Partner will pay as its initial Capital Contribution to the Partnership an amount determined by the General Partner. The General Partner will give the Private Limited Partners written notice of the amount and due date of the initial Capital Contribution.

(c)    After the date of the initial Capital Contribution, the Private Limited Partners will pay the remaining balance of their Commitments in such amounts and at such times as will be determined by the General Partner in its sole discretion. The General Partner will give the Private Limited Partners notice before each such additional Capital Contribution is due. Each such notice will be given not less than ten (10) days before the payment to which such notice relates is due, and will specify the date on which the additional Capital Contribution will be due and the percentage or amount of the Private Limited Partners' Commitments then due.

5.03.    Capital Contributions by Preferred Limited Partners. Each Preferred Limited Partner will contribute the entire amount of its initial Commitment to the Partnership on the date of its admission to the Partnership as a Preferred Limited Partner. On the date that any Preferred Limited Partner increases its Commitment, it will pay a Capital Contribution equal to 100% of the amount of the increase in its Commitment. Any Capital Contribution by a Preferred Limited Partner with respect to its initial Commitment or increase in its Commitment will be deemed to include any portion of any such Commitment contributed as provided in Section 4.06(d).

5.04.    Capital Contributions by the General Partner.

(a)    All Capital Contributions to the Partnership by the General Partner must be in cash, except as provided in this Agreement and approved by SBA. Contributions made by the General Partner shall be made at the General Partner's election either in cash or by means of a demand promissory note, bearing interest at the applicable Federal rate for short term obligations as determined under Section 1274(d) of the Code, which note shall be in the form of *Exhibit B*.

(b)    The General Partner will make an initial Capital Contribution in an amount equal to one percent (1%) of the aggregate Capital Contributions of the Private Partners on the date of this Agreement. If any Private Limited Partner makes an additional Capital

Contribution or an Additional Private Limited Partner makes a Capital Contribution or an additional Capital Contribution, the General Partner shall be required to contribute capital equal to one and 1/100 percent (1.01%) of the Private Limited Partner's additional Capital Contribution or the Additional Private Limited Partner's initial or additional Capital Contribution or a lesser amount (including zero) that causes the General Partner's Capital Account balance to be equal to the lesser of (a) $500,000 or (b) one percent (1%) of the total positive Capital Account balances of the Partnership (excluding the positive Capital Account balances of the Preferred Limited Partner). Contributions made pursuant to this Section 5.04(b) may be made at the General Partner's election either in cash or by means of a demand promissory note, bearing interest at the applicable federal rate for short term obligations as determined under Section 1274(d) of the Code, which note shall be in the form of *Exhibit B*.

(c)     Prior to the termination of the Partnership, the General Partner shall pay in full any note contributed to the Partnership pursuant to Section 5.04(b).

5.05.    Additional Private Limited Partners and Increased Commitments. The General Partner may from time to time after the date of this Agreement and during the six month period following the Commencement Date, without the consent of the Private Limited Partners, and on or after the end of that period for an additional three month period with the consent of a majority in interest of the Private Limited Partners admit one or more new Private Limited Partners (the "Additional Private Limited Partners") or permit any Private Limited Partner to increase its Commitment under the following terms and conditions:

(a)     Each such Additional Private Limited Partner and Private Limited Partner increasing its Commitment shall execute and deliver to the Partnership the documentation required in this Section 5.05, thereby evidencing its agreement to be bound by and comply with the terms and provisions hereof as if it were an original signatory to this Agreement and *Schedule A* attached to this Agreement shall be amended to reflect its name, address and Commitment (or the increase in such Private Limited Partner's Commitment, as the case may be).

(b)     Each such Additional Private Limited Partner shall be admitted to the Partnership as of the date that (i) an executed subscription agreement in form and substance acceptable to the General Partner has been accepted by the Partnership, (ii) an executed counterpart of this Agreement has been delivered to and accepted by the Partnership and (iii) such Additional Private Limited Partner shall have paid by way of a Contribution to the Partnership, cash in an amount equal to such percentage of its Commitment as is determined by the General Partner.

(c)     In the case of each Private Limited Partner whose Commitment has been increased, such increased Commitment shall be effective as of the date (i) an executed document in form and substance acceptable to the General Partner reflecting such increased Commitment is executed and delivered by such Private Limited Partner and accepted by the Partnership and (ii) such Private Limited Partner shall have paid by way of Capital Contribution to the Partnership cash in an amount equal to such percentage of the increased amount of its Commitment as is determined by the General Partner.

(d)    If Additional Private Limited Partners are admitted to the Partnership as Private Limited Partners and if Private Limited Partners increase their Capital Commitments pursuant to this Section 5.05, Capital Contributions of such Private Limited Partners and Organizational Expenses and other expenses of the Partnership (including Management Compensation) that are allocated to the Private Limited Partners on or after the effective date of such admission or increase shall be made by and allocated to such Private Limited Partners to the extent necessary to cause such persons to be treated with respect to such items as if they had been Private Limited Partners from the commencement of the Partnership. Nothing in this Section 5.05(d) shall have any effect on how the Management Fee is calculated pursuant to Section 3.07.

5.06.    Conditions to the Commitments of the General Partner and the Private Limited Partners.

(a)    Notwithstanding any provision in this Agreement to the contrary, on the earlier of (i) the completion of the liquidation of the Partnership or (ii) one year from the commencement of the liquidation, the General Partner and the Private Limited Partners will be obligated to contribute any amount of their respective Commitments, not previously contributed to the Partnership, if and to the extent that the other Assets of the Partnership have not been sufficient to permit at that time the redemption of all Outstanding Leverage, the payment of all amounts due with respect to the Outstanding Leverage as provided in the SBIC Act, and the payment of all other amounts owed by the Partnership to SBA.

(b)    Notwithstanding any provision in this Agreement to the contrary, if the Partnership is subject to restricted operations (as that term is used in the SBIC Act) and before the liquidation of the Partnership SBA requires the General Partner and the Private Limited Partners to contribute any amount of their respective Commitments not previously contributed to the Partnership, the obligation to make such contributions will not be subject to any conditions stated in this Agreement other than limitations on the amount of capital which a Partner is obligated to contribute (i) within any specified time period or (ii) before any specified date.

(c)    The provisions of this Section do not apply to the Commitment of any Private Limited Partner whose obligation to make Capital Contributions has been terminated or who has withdrawn from the Partnership, with the consent of SBA, under a provision of this Section 5 or Section 8 or any agreement, release, settlement or action under any provision of this Agreement. No Private Limited Partner or General Partner has any right to delay, reduce or offset any obligation to contribute capital to the Partnership called under this Section 5.06 by reason of any counterclaim or right to offset by the Partner or the Partnership against SBA or any Preferred Limited Partner.

5.07.    Termination of the Obligation to Contribute Capital.

(a)    Any Private Limited Partner may elect to terminate its obligation in whole or in part to make a Capital Contribution required under this Agreement, or upon demand by the General Partner, will no longer be entitled to make such Capital Contribution, if the Private Limited Partner or the General Partner obtains an opinion of counsel as provided under

Section 5.08 to the effect that making such contribution would require the Private Limited Partner to withdraw from the Partnership under Section 8.06 through Section 8.10.

(b)    Upon receipt by the General Partner of a notice and opinion as provided under Section 5.08, unless cured within the period provided under Section 5.09, the Commitment of the Private Limited Partner delivering the opinion will be deemed to be reduced by the amount of such unfunded Capital Contribution and this Agreement will be deemed amended to reflect a corresponding reduction of aggregate Commitments to the Partnership.

5.08.    Notice and Opinion of Counsel.

(a)    A copy of any opinion of counsel issued as described in Section 5.07 or Section 8.06 through Section 8.10 must be sent by the General Partner to SBA, together with (i) the written notice of the election of the Private Limited Partner or (ii) the written demand of the General Partner, to which the opinion relates.

(b)    An opinion rendered to the Partnership as provided in Section 5.07 or Section 8.06 through Section 8.10 will be deemed sufficient for the purposes of those Sections only if the General Partner and SBA each approve (i) the counsel rendering the opinion, and (ii) the form and substance of the opinion.

5.09.    Cure, Termination of Capital Contributions and Withdrawal.

(a)    Unless within ninety (90) days after the giving of written notice and opinion of counsel, as provided in Section 5.08, the Private Limited Partner or the Partnership eliminates the necessity for termination of the obligation of the Private Limited Partner to make further Capital Contributions or for the withdrawal of the Private Limited Partner from the Partnership in whole or in part to the reasonable satisfaction of the Private Limited Partner and the General Partner, the Private Limited Partner will withdraw from the Partnership in whole or in part to the extent required, effective as of the end of the ninety (90) day period.

(b)    Subject to the provisions of Section 5.11, in its discretion the General Partner may waive all or any part of the ninety (90) day cure period and cause such termination of Capital Contributions or withdrawal to be effective at an earlier date as stated in the waiver.

(c)    Any distributions made to a Private Limited Partner with respect to such Partner's withdrawal under this Section will be subject to and made as provided in Section 8.11.

5.10.    Failure to Make Required Capital Contribution.  The Partnership is entitled to enforce the obligations of each Partner to make the contributions to capital specified in this Agreement. The Partnership has all rights and remedies available at law or equity if any such contribution is not so made.

5.11.    Notice and Consent of SBA with Respect to Capital Contribution Defaults.

(a)    The Partnership must give SBA prompt written notice of any failure by a Private Limited Partner to make any Capital Contribution to the Partnership required under this Agreement when due which failure continues beyond any applicable grace period specified in this Agreement.

(b)    Unless SBA has given its prior consent or the provisions of Section 5.11(c) have become applicable, the Partnership will not (i) take any action (including entering into any agreement (whether oral or written), release or settlement with any Partner) which defers, reduces, or terminates the obligations of the Partner to make contributions to the capital of the Partnership, or (ii) commence any legal proceeding or arbitration, which seeks any such deferral, reduction or termination of such obligation. Without the consent of SBA (including SBA's deemed consent under Section 5.11(c)) no such agreement, release, settlement or action taken will be effective with respect to the Partnership or any Partner.

(c)    If the Partnership has given SBA thirty (30) days prior written notice of any proposed legal proceeding, arbitration or other action described under Section 5.07(b) with respect to any default by a Private Limited Partner in making any Capital Contribution to the Partnership, and the Partnership has not received written notice from SBA that it objects to the proposed action within the thirty (30) day period, then SBA will be deemed to have consented to the proposed Partnership action.

(d)    Any notice given by the Partnership to SBA under this Section must:

(i).    be given by separate copies directed to each of the Investment Division and the Office of the General Counsel of SBA;

(ii)    explicitly state in its caption or first sentence that the notice is being given with respect to a specified default by a Private Limited Partner in making a Capital Contribution to the Partnership and a proposed legal proceeding, arbitration, agreement, release, settlement or other action with respect to that default; and

(iii)    state the nature of the default, the identity of the defaulting Private Limited Partner, and the nature and terms of the proposed legal proceeding, arbitration, agreement, release, settlement or other action with respect to that default.

5.12.    Default Remedies.. Subject to Section 5.10, the Partnership shall be entitled to enforce the obligations of each Private Partner to make Capital Contributions as specified in this Agreement through the exercise of any or all rights and remedies set forth in this Section 5.12, in the event any such Capital Contribution is not made, in addition to any other rights and remedies available at law or in equity.

(a)    Interest on Overdue Contributions.  In the event that any Private Partner fails to make a Capital Contribution required under this Agreement within five (5) business days after the date such contribution is due, then the General Partner may, in its sole discretion, elect to charge such Private Partner interest at an annual rate equal to fifteen percent (15%) on the amount due from the date such amount became due until the earlier of (i) the date on which such payment is received by the Partnership or (ii) the date of any notice given to such Private Partner by the General Partner pursuant to Section 5.12(c), (d) or (e).  Any distributions to which such Private Partner is entitled shall be reduced by the amount of such interest, and such interest shall be deemed to be income to the Partnership. The amount of interest charged as provided in this Section 5.12(a) shall not exceed the amount of such Private Partner's Capital Account. If the rate of interest payable under this Section 5.12(a) is limited by law, the rate payable hereunder shall be the lesser of (i) the rate set forth in the first sentence of this Section 5.12(a) or (ii) the maximum rate permitted by law. If, however, interest is paid hereunder in excess of the maximum rate of interest permitted by law, any interest so paid which exceeds such maximum rate shall automatically be considered a Capital Contribution and shall automatically be applied in reduction of the Capital Contribution then owed to the extent of such excess.

(b)    Termination of Right to Make Further Capital Contributions. In the event that any Private Limited Partner fails to make a Capital Contribution required under this Agreement within five (5) business days after the date such contribution is due, the General Party may, in its sole discretion elect to declare by notice to such Private Limited Partner, that:

(i)    Such Private Limited Partner's Commitment shall be deemed to be reduced to the amount of any Capital Contributions timely made pursuant to this Agreement; and

(ii)    Upon such notice (i) such Private Limited Partner shall have no right to make any Capital Contribution thereafter (including the contribution as to which the default occurred and any contribution otherwise required to be made thereafter pursuant to the terms of this Agreement) and (ii) this Agreement shall be deemed amended to reflect such reduced Commitment.

(c)    Forfeiture of Interest in the Partnership. In the event that any Private Limited Partner fails to make a Capital Contribution required under this Agreement, within five (5) business days after notice by the General Partner to such Private Limited Partner that it has failed to make its contribution on the date such contribution was due, the General Partner may in its sole discretion declare, by notice of forfeiture to such Private Limited Partner, that one hundred percent (100%) of the interest of such Private Limited Partner in the Partnership (including amounts in its Capital Account as well as any interest in future profits, losses or distributions of the Partnership) is forfeited, effective as of the date of such Private Limited Partner's failure to make such required Capital Contribution, in which event, as of the date of such notice of forfeiture (i) the Private Limited Partner shall cease to be a Partner with respect to such forfeited interest; provided, however, that such forfeited Private Limited Partner shall cease to have any liability for the payment of the forfeited percentage of any Capital Contributions due at such time or in the future and (ii) the forfeited percentage of such Private Limited Partner's Capital Account shall be held by the

Partnership and reallocated among the Capital Accounts of the General Partner and the Private Limited Partners (other than such forfeited Partner) in accordance with their respective aggregate Capital Contributions on the date of reallocation.

(d)    Withholding and Application of Distributions. No part of any distribution shall be paid to any Private Partner from which there is then due and owing to the Partnership, at the time of such distribution, any amount required to be paid to the Partnership. At the election of the General Partner, which it may make in its sole discretion, the Partnership may either (i) apply all or part of any such withheld distribution in satisfaction of the amount then due to the Partnership from such Private Partner or (ii) withhold such distribution until all amounts then due are paid to the Partnership by such Private Partner. Upon payment of all amounts due to the Partnership (by application of withheld distributions or otherwise), the General Partner shall distribute any unapplied balance of any such withheld distribution to such Private Partner. No interest shall be payable on the amount of any distribution withheld by the Partnership pursuant to this Section 5.12(d).

(e)    Required Sale of Interest in the Partnership. In the event that any Private Limited Partner fails to make a Capital Contribution required under this Agreement within five (5) business days after notice by the General Partner to such Private Limited Partner that it has failed to make its contribution on the date such contribution is due, unless the General Partner has acted pursuant to Sections 5.12(b) or 5.12(c), the General Partner may, in its sole discretion, elect to declare such Private Limited Partner in default. If the General Partner so elects to declare such Private Limited Partner in default (such Private Limited Partner being hereinafter referred to as the "Optionor"), then the other Private Limited Partners of the Partnership which are not in default (the "Optionees") and the General Partner shall have the right and option to acquire one hundred percent (100%) of the Partnership Interest, which shall include one hundred percent (100%) of the Capital Account (the "Optioned Partnership Interest") of the Optionor on the following terms:

(i)    The General Partner shall give the Optionees notice promptly after declaration of any such default. Such notice shall advise each Optionee of the portion of the Optioned Partnership Interest available to it and the price therefor. The portion available to each Optionee shall be that portion of the Optioned Partnership Interest that bears the same ratio to the Optioned Partnership Interest as each Optionee's Capital Contributions to the Partnership bears to the aggregate Capital Contributions to the Partnership, exclusive of the Capital Contributions to the Partnership of the Optionor. The aggregate price for the Optioned Partnership Interest shall be the assumption of the unpaid Capital Commitment obligation (both that portion then due and amounts due in the future) of the Optionor (the "Option Price"). The Option Price for each Optionee shall be prorated according to the portion of the Optioned Partnership Interest purchased by each such Optionee so that the percentage of the unpaid Capital Commitment assumed by each such Optionee is the same as the percentage of the Optioned Partnership Interest purchased by such Optionee. The option granted hereunder shall be exercisable by each Optionee in whole only at any time within thirty (30) days of the date of the notice from the General Partner by the delivery to the General Partner of (A) a notice of exercise of option, and (B) the Capital Contribution due in accordance with Section 5.12(e). The General Partner shall forward the above notices of exercise of option received to the Optionor.

(ii)    Should any Optionee not exercise its option within the period provided in Section 5.12(e)(i), the General Partner, within ten (10) days of the end of such period, shall notify the other Optionees who have previously exercised their options in full, which Optionees shall have the right and option ratably among them to acquire the portion of the Optioned Partnership Interest not so acquired (the "Remaining Portion") within ten (10) days of the date of the notice specified in this Section 5.12(e) on the same terms as provided in Section 5.12(e)(i).

(iii)    The amount of the Remaining Portion not acquired by the Optionees pursuant to Section 5.12(e)(ii) may be acquired by the General Partner within ten (10) days of the expiration of the period specified in Section 5.12(e)(ii) on the same terms as set forth in Section 5.12(e)(i).

(iv)    The amount of the Remaining Portion not acquired by the Optionees and the General Partner pursuant to Section 5.12(e)(iii) may, if the General Partner deems it in the best interest of the Partnership, be sold to any other corporations, partnerships, individuals or other entities on terms not more favorable to such purchaser than the Optionees' option (and the General Partner may admit any such third party purchaser as a Limited Partner). Any consideration received by the Partnership for such amount of the Optionor's interest in the Partnership in excess of the Option Price therefor shall be retained by the Partnership and allocated among the Partners' Capital Accounts in proportion to the respective Partners' Capital Contributions.

(v)    Upon exercise of any option hereunder, such Optionee (or the General Partner, if it has exercised its rights) shall be deemed to have assumed that portion of the Optionor's unpaid Capital Commitment representing the Option Price of the purchased portion of the Option Partnership Interest and shall be obligated (A) to contribute to the Partnership the portion of the Capital Contribution then due from the Optionor equal to the percentage of the Optioned Partnership Interest purchased by such Optionee and (B) to pay the same percentage of any further Capital Contributions which would have otherwise been due from such Optionor.

(vi)    Upon the purchase by the General Partner of any portion of the Optioned Partnership Interest in the Partnership, the General Partner shall also become a Private Limited Partner to the extent of such interest.

(vii)    Upon the purchase of any portion of any Optioned Partnership Interest by an Optionee, the General Partner or other person pursuant to this Section 5.12., the Optionor shall have no further rights or obligations under this Agreement with respect to such portion.

(viii)    Upon the purchase of any portion of the Optioned Partnership Interest, for purposes of computing such purchaser's aggregate Capital Contributions, such purchaser shall be deemed to have aggregate Capital Contributions (or the aggregate Capital Contributions of any Optionee, shall be increased by an amount) equal to the percentage of the defaulting Private Limited Partner's aggregate Capital Contribution which the purchased portion of the Optioned Partnership Interest represents of the defaulting Private Limited Partner's entire

Partnership interest, and the aggregate Capital Contributions of such defaulting Private Limited Partner shall be reduced by a corresponding amount.

       (f)    Acceleration.  In the event that any Partner fails to make a Capital Contribution required under this Agreement within five (5) business days after the date such contribution is due, then the General Partner may, in its sole discretion, elect to accelerate the unpaid Capital Commitment of that Private Partner which shall be payable in full not later than the fifth business day following the date notice of such acceleration has been sent to that defaulting Private Partner.

      6.    Adjustment of Capital Accounts.

      6.01.  Establishment of Capital Accounts.  There will be established on the books of the Partnership an Opening Capital Account for each Partner in accordance with the definitions and methods of allocation prescribed in this Agreement.

      6.02.  Time of Adjustment of Capital Accounts.  The Opening Capital Account of each Partner may be adjusted in accordance with Section 6.03 as of the following dates: (i) the close of each fiscal year of the Partnership; (ii) the day before the date of the admission of an Additional Private Limited Partner, increase in any Private Limited Partner's Commitment, admission of any Preferred Limited Partner or increase in the Commitment of any Preferred Limited Partner; (iii) the day before the dissolution of the Partnership; (iv) the date of a distribution; and (v) such other dates as this Agreement may provide.

      6.03.  Allocations.

      (a)    General Allocations.  As of the times stated in Section 6.02, allocations will be made to the Opening Capital Accounts of the Partners to arrive at each Partner's Closing Capital Account for the period in the following order and amounts:

      (i)    The amount of any Capital Contributions paid by each Partner during such period will be credited to the Partner's Opening Capital Account (other than Capital Contributions referred to in clause (i) of the definition of "Opening Capital Account" in Section 1.01); provided, however, that any such Capital Contribution will be credited to the Partner's Opening Capital Account on the later of the date the Capital Contribution was due or the date on which the Capital Contribution was actually received by the Partnership;

      (ii)    The amount of any distributions made to each Partner during the period will be debited against the Partner's Opening Capital Account;

      (iii)    Net Profits will be credited and Net Losses will be debited to the Opening Capital Accounts of the Preferred Limited Partners in such amount and in such manner as is required to allocate to the Preferred Limited Partners the amount of the Earned Prioritized Payments and earned Adjustments and earned Charges to which the Preferred Limited

Partners are then entitled (determined as provided in the SBIC Act), to be apportioned among them as required under the SBIC Act;

(iv)    The balance of any Net Profits will be credited, and the balance of any Net Losses will be debited, to the Opening Capital Accounts of the Partners as follows:

(A)    to the Preferred Limited Partners in such amount as is required to allocate to the Preferred Limited Partners the amount of the Profit Participation to which the Preferred Limited Partners are then entitled (determined as provided in the SBIC Act), to be apportioned among them as required under the SBIC Act; and

(B)    the balance to the General Partner and the Private Limited Partners to be apportioned among the General Partner and the Private Limited Partners as follows:

(I)    Except as otherwise provided in this Agreement, Net Profits shall be allocated to the General Partner and the Private Limited Partners in accordance with the following order and priority:

(y)    First, to the General Partner and the Private Limited Partners until the cumulative Net Profits allocated pursuant to this Section 6.03(a)(iv)(B)(I)(y) is equal to the cumulative Net Losses allocated to the Private Partners pursuant to Section 6.03(a)(iv)(B)(II) for all prior periods. Net Profits allocated pursuant to this Section 6.03(a)(iv)(B)(I)(y) shall be allocated pro rata among the Private Partners in proportion to their share of the Net Losses being offset.

(z)    Second, eighty percent (80%) to the General Partner and the Private Limited Partners in proportion to their Partnership Percentages and twenty percent (20%) to the General Partner.

(II)    Except as otherwise provided in this Agreement, Net Losses shall be allocated to the General Partner and the Private Limited Partners in accordance with the following order and priority:

(y)    To the extent Net Profits have been allocated to the Private Partners in any prior period, Net Losses shall be allocated to offset any Net Profits allocated pursuant to Section 6.03(a)(iv)(B)(I)(z) hereof and then to offset any Net Profits allocated pursuant to Section 6.03(a)(iv)(B)(I)(y) hereof, in each case pro rata among the General Partner and the Private Limited Partners in proportion to the Net Profits being offset. To the extent any allocations of Profits are offset pursuant to this Section 6.03(a)(iv)(B)(II)(y), such allocation shall be disregarded for purposes of computing subsequent allocations under this Section 6.03(a)(iv)(B)(II)(y).

(z)    Except as provided in Section 6.03(a)(iv)(B)(II)(y) hereof, Net Losses shall be allocated to the Private Partners in proportion to their Partnership Percentages.

(b)    Special Rules.  Notwithstanding the provisions of Section 6.03(a)(iv):

(i)    at such time as the Capital Account of the General Partner or any Private Limited Partner is reduced to an amount equal to or less than the aggregate Capital Contributions of such Private Partner (less all distributions to such Private Partner), the balance of all Net Losses will be allocated:

(A)    first, to the remaining Capital Accounts of the General Partner and Private Limited Partners which have not been reduced to zero, first using the allocations set forth in Section 6.03(a)(iv)(B)(II)(y) and then using the allocations set forth in Section 6.03(a)(iv)(B)(II)(z);

(B)    second, after the Capital Accounts of the General Partner and all Private Limited Partners have been reduced to zero, then to the remaining Capital Accounts of the Preferred Limited Partners which have not been reduced to zero (to be apportioned among them according to their respective Capital Accounts); and

(C)    third, after the Capital Accounts of all Private Limited Partners and Preferred Limited Partners have been reduced to zero, then the balance to the General Partner.

(ii)    If Net Losses are allocated in accordance with the foregoing Section 6.03(b)(i), any Net Profits that are required to be allocated after such special allocation of Net Losses as provided in the foregoing clause will be allocated:

(A)    first, to the General Partner until the effect of the special allocation of Net Losses under Section 6.03(b)(i)(C) is reversed and eliminated;

(B)    second, to all of the Preferred Limited Partners to whom the allocation of such Net Losses has been made under Section 6.03(b)(i)(B) until the effect of such special allocation of Net Losses has been reversed and eliminated; and

(C)    third, to the General Partner and Private Limited Partners to whom the allocation of such Net Losses has been made under Section 6.03(b)(i)(A) in reverse order of such allocations until the effect of such special allocation of Net Losses has been reversed and eliminated.

(c)    Compliance with Code.  To the extent not otherwise accomplished by the provisions of Section 6.03(a) and Section 6.03(b), the Opening Capital Accounts of the Partners will be adjusted to effect any allocation of any item of income, gain, loss,

deduction or credit to a Partner required by the Code. The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with Treasury Regulations §1.704-1(b), and shall be interpreted and applied in a manner consistent with such Regulations. In the event that the General Partner shall determine that it is prudent to modify the manner in which Capital Accounts or any debits or credits thereto are computed in order to comply with such Regulations, the General Partner may make such modifications without the consent of the Partners, provided that such modifications are not likely to have a material effect on the amounts distributable to the Partners upon the dissolution of the Partnership and provided further that, if any such modification will adversely affect the SBA or the Preferred Limited Partner, the General Partner shall obtain the consent of SBA.

### 6.04.   Tax Matters.

(a)    Qualified Income Offset. If at the end of a fiscal year of the Partnership, a Private Limited Partner or any Preferred Limited Partner unexpectedly receives an adjustment, allocation, or distribution described in clauses (4), (5) and (6) of Treasury Regulation §1.704-1(b)(2)(ii) and that adjustment, allocation, or distribution reduces that Private Limited Partner's or Preferred Limited Partner's Opening Capital Account below zero (0), then the Private Limited Partner or Preferred Limited Partner will be allocated all items of income and gain of the Partnership for that year and for all subsequent fiscal years until the deficit balance has been eliminated as provided in Treasury Regulation §1.704-1(b)(2)(ii)(d), as quickly as possible. If any such unexpected adjustment, allocation or distribution creates a deficit balance in the Opening Capital Accounts of more than one Private Limited Partner or Preferred Limited Partner in any fiscal year, all items of income and gain of the Partnership for the fiscal year and all subsequent fiscal years will be allocated among all such Private Limited Partners and Preferred Limited Partners in proportion to their respective deficit balances until such balances have been eliminated. If any allocation is made pursuant to this paragraph, subsequent allocations shall be made (in a manner consistent with this paragraph) to offset the effects of such prior allocation. This provision is intended to qualify as a "qualified income offset" within the meaning of Treasury Regulation §1.704-1(b)(2)(ii)(d).

(b)    Section 704(c) Allocations. In the event that the book value of the Partnership assets differ from their adjusted tax basis upon contribution or revaluation, the tax allocations of income, gain, loss and deduction shall be shared among the Partners in a manner that takes into account the variation between such book value and adjusted tax basis, pursuant to Section 704(c) of the Code or pursuant to the principles thereof. Allocations made under this Section 6.04(b) are made solely for federal, state or local income tax purposes and shall not affect, or in any way be taken into account in computing any Partner's Capital Account or share of Net Profits, Net Losses, other items or distributions pursuant to any provision of this Agreement.

(c)    Tax Election Upon Transfer. Upon the transfer of an interest in the Partnership, the Partnership may elect, pursuant to Section 754 of the Code, to adjust the basis of the Partnership's property as allowed by Section 734(b) and 743(c) of the Code. Any election so made will be filed with the Partnership Return for the first taxable year to which the election applies or otherwise in accordance with Treasury Regulations.

(d)    Authority of General Partner to Vary Allocations to Preserve and Protect Partners' Intent.

(i)    It is the intent of the Partners that each Partner's distributive share of income, gain, loss, deduction, or credit (or item thereof) shall be determined and allocated in accordance with Sections 6.03 and 6.04 to the fullest extent permitted by Section 704(b) of the Code. In order to preserve and protect the determinations and allocations provided for in Sections 6.03 and 6.04, the General Partner is authorized to allocate income, gain, deduction, recapture or credit (or item thereof) arising in any year in a manner different from that otherwise provided for in Sections 6.03 and 6.04 if, and to the extent that, allocating income, gain, deduction, recapture or credit (or item thereof) in the manner provided for in Sections 6.03 and 6.04, would cause the determinations and allocations of each Partner's distributive share of income, gain, deduction, recapture or credit (or item thereof) not to be permitted by Section 704(b) of the Code and any Treasury Regulations promulgated thereunder. Any allocation made pursuant to this Section 6.04(d) shall be deemed to be a complete substitute for any allocation otherwise provided for in Sections 6.03 and 6.04 and no amendment of this Agreement or approval of any Partner shall be required.

(ii)    In making any allocation under Section 6.04.(d)(iii) the General Partner is authorized to act only after having been advised in writing, both by counsel to the Partnership and by the Partnership's accountant, that in their opinion, after examining Section 704(b) of the Code and any current or future proposed, temporary, or final Treasury Regulations thereunder, (A) the new allocation is necessary, and (B) the new allocation is the minimum modification of the allocations otherwise provided for in Sections 6.03 and 6.04 necessary in order to assure that, either in the then current year or in any preceding year, each Partner's distributive share of income, gain, deduction, recapture or credit (or item thereof) is determined and allocated in accordance with Sections 6.03 and 6.04 to the fullest extent permitted by Section 704(b) of the Code and the Treasury Regulations thereunder.

(iii)    New allocations made by the General Partner in reliance upon the written advice of the attorneys and accountants described above shall be deemed to be made pursuant to the fiduciary obligation of the General Partner to the Partnership, and no such new allocation shall give rise to any claim or cause of action by any Private Limited Partner.

(iv)    If the General Partner is required to make any new allocation in a manner less favorable to the Private Limited Partners than is otherwise provided for in Sections 6.03 and 6.04, the General Partner shall be, and hereby is, authorized and directed, insofar as permitted by Section 704(b) of the Code, to allocate income, gain, deduction, recapture or credit (or item thereof) arising in later years in a manner so as to bring the proportion of income, gain, deduction, recapture or credit (or item thereof) allocated to the Private Limited Partners as nearly as possible to the proportion otherwise contemplated by Sections 6.03 and 6.04.

(v)    The General Partner has the power as provided in this Section 6.04(d), limited as provided in the following sentence, to make such allocations and to take

such actions necessary under the Code or other applicable law to effect and to maintain the substantial economic effect of allocations made to the Partners under Section 704(b) of the Code. The preceding sentence does not give the General Partner any power to make any allocation or take any other action that affects the rights or preferences of, or allocations or distributions to, any Preferred Limited Partner. All allocations made and other actions taken by the General Partner under this Section 6.04(d)(v) will be consistent to the maximum extent possible with the provisions of this Agreement.

(e)    Tax Controversies. The General Partner is designated as the Partnership's "Tax Matters Partner" pursuant to Section 6231(a)(7) of the Code, and, to the extent authorized or permitted under applicable law, the General Partner is authorized and required to represent the Partnership and each Private Limited Partner in connection with all examinations of the Partnership's affairs by tax authorities, including resulting administrative and judicial proceedings, and to expend Partnership funds for professional services and costs connected therewith. Each Private Limited Partner agrees to cooperate with the General Partner and to do or refrain from doing any and all such things reasonably required by the General Partner to conduct such proceedings.

(f)    Proceedings. The General Partner must keep the Partners informed of all administrative and judicial proceedings with respect to Partnership tax returns or the adjustment of Partnership items. Any Partner who enters into a settlement agreement with respect to Partnership items must promptly give the General Partner notice of the settlement agreement and terms that relate to Partnership items.

(g)    Promissory Note Income. To the extent the Partnership has taxable interest income pursuant to Section 483 or Sections 1271 through 1288 of the Code with respect to any promissory note issued by a Private Limited Partner:

(i)    Such interest income shall be specially allocated to the Private Partner to whom such promissory note relates;

(ii)    The amount of such interest income shall be excluded from the Capital Contributions credited to such Private Partner's Capital Account in connection with payments of principal with respect to such promissory note; and

(iii)    No distribution shall be made under Section 7.01(b)(ii) with respect to the income allocation made pursuant to Section 6.04(g)(i).

7.    Distributions.

7.01.    Distributions to Partners.

(a)    The Partnership must make distributions of cash and/or property, if any, at such times as the SBIC Act requires and may make distributions of cash and/or property at such other times as the SBIC Act permits and as are determined under this Agreement.