**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

8  UNITED STATES SMALL BUSINESS      )   Case No. 07-4530 SC
   ADMINISTRATION IN ITS CAPACITY AS )
9  RECEIVER FOR ALTO TECH II, L.P.,  )
                                     )   ORDER DENYING
10           Plaintiff,              )   PLAINTIFF'S MOTION
                                     )   FOR SUMMARY JUDGMENT
11      v.                           )   AND GRANTING IN PART
                                     )   AND DENYING IN PART
12 ALTO TECH Ventures, LLC, a Delaware)  DEFENDANTS CROSS-
   limited liability company; Alto   )   MOTIONS FOR SUMMARY
13 Tech Management, LLC, a California )   JUDGMENT
   limited liability company; Gloria )
14 Chen Wahl, an individual; Walter  )
   T.G. Lee, an individual and Thanos)
15 Triant, an individual,           )
                                     )
16           Defendants.             )
                                     )
17 _____ )

18  **I.   INTRODUCTION**

19        The present dispute arises out of an investment made by the

20  now-defunct venture capital firm Alto Tech II, L.P. ("Alto Tech").

21  Alto Tech was a federally funded and regulated Small Business

22  Investment Company ("SBIC"), licensed by the United States Small

23  Business Administration ("SBA").  In a previous action, the SBA

24  was appointed as the Receiver for Alto Tech.  In this capacity as

25  Receiver, the SBA now seeks to hold the defendants Alto Tech

26  Ventures, LLC ("ATV"), Alto Tech Management, LLC ("ATM"), Gloria

27  Chen Wahl ("Wahl"), Walter T.G. Lee ("Lee"), and Thanos Triant

28  ("Triant") (collectively "Defendants"), liable for an investment

of $1.5 million, now worthless, that was allegedly in violation of the Small Business Investment Act of 1958, 15 U.S.C. § 661 et seq. (the "Act"), its implementing regulations, and various state laws.

Now before the Court are various summary judgment motions. The SBA, in its capacity as Receiver ("SBA," "Receiver," or "Plaintiff") has filed a Motion for Summary Judgment ("SBA Motion"). Docket No. 49. Defendants Wahl and Lee also filed a joint Motion for Summary Judgment ("Wahl/Lee Motion"). Docket No. 41. Defendant Triant filed a Notice of Joinder in the Wahl/Lee Motion. Docket No. 52. The SBA and Wahl/Lee filed Oppositions and Replies to each other's Motions. Docket Nos. 55, 59, 70, 77. Defendant Triant also filed an Opposition to the SBA's Motion, and, at the same time, filed his own Motion for Summary Judgment ("Triant Motion").[1] Docket Nos. 68, 69. The SBA submitted an Opposition to the Triant Motion and Triant filed a Reply, a mere four days before the date on which the hearing for these Motions was scheduled. Docket Nos. 72, 85. For the reasons discussed below, the SBA's Motion is DENIED; the Wahl/Lee Motion is GRANTED IN PART AND DENIED IN PART; and Triant's Motion is GRANTED IN PART AND DENIED IN PART.

## II. **JURISDICTION**

Although Defendants make only a cursory argument against jurisdiction, the Court addresses it nonetheless. The Court has jurisdiction pursuant to 28 U.S.C. § 754 because this action is

---

[1]  Whether Triant's Motion was timely and whether this Court will consider it is discussed below.

United States District Court
For the Northern District of California

ancillary to the receivership proceeding, <u>United States v. Alto</u>
<u>Tech II, L.P.</u>, Case No. 06-3879 (N.D. Cal. 2006), pending in this
Court.  <u>See</u> <u>Small Bus. Admin. v. Echevarria</u>, 864 F. Supp. 1254,
1257 (S.D. Fla. 1994) (finding that the court had "jurisdiction
over this matter pursuant to 28 U.S.C. § 754 because this matter
is ancillary to a receivership proceeding pending in" that court).
The Court also has jurisdiction under 28 U.S.C. § 1345, which
provides that "the district courts shall have original
jurisdiction of all civil actions . . . commenced by the United
States, or by any agency or officer thereof expressly authorized
to sue by Act of Congress."  In the present situation, the SBA is
authorized to sue by 28 U.S.C. § 754, which permits a "receiver
appointed in any civil action or proceeding involving property,
real, personal or mixed," to sue in any federal district court.
<u>See</u> <u>also</u> <u>U.S. Small Bus. Admin. v. Coqui Capital Mgmt.</u>, No. 08-
0978, 2008 WL 4735234, at *1 (S.D.N.Y. Oct. 27, 2008) (stating
"[t]he Small Business Investment Act of 1958 provides federal
jurisdiction over the receivership proceeding, 15 U.S.C. §§ 687
and 687h; the Court has supplemental jurisdiction of this action
pursuant to 28 U.S.C. §§ 754 and 1367").

## III.  <u>BACKGROUND</u>

### A.   <u>Alto Tech, ATV, and ATM</u>

Alto Tech was a Delaware limited partnership formed in April
2000, for the purpose of operating as a venture capital fund.
McClure Decl., Docket No. 49, Ex. A, Agreement of Limited
Partnership of Alto Tech II, LP ("Partnership Agreement"); Wahl

3

Decl., Docket No. 43, ¶ 2.[2]  Alto Tech was licensed as an SBIC under the Act.  McClure Decl. Ex. A; G. Wahl Decl. ¶ 2.  At its peak, Alto Tech had total capital contributions in excess of $30 million, with Alto Tech's limited partners contributing close to $17 million and the SBA, as Preferred Limited Partner, contributing approximately $14 million.  Wahl Decl. ¶ 2.

ATV was a Delaware limited liability company formed for the purpose of acting as Alto Tech's general partner.  Wahl Decl. ¶¶ 2-4; Wahl/Lee Answer to Complaint ("Wahl/Lee Answer"), Docket No. 10, ¶ 20.  Until Triant resigned in November 2003, Defendants Wahl, Lee, and Triant were the managing members of ATV, which, as the general partner of Alto Tech, was exclusively responsible for investment policy.  Wahl/Lee Answer ¶ 20; Triant Decl., Docket No. 65, ¶ 3; Ex. A.

In addition to its general partner ATV, Alto Tech was comprised of the SBA as a Preferred Limited Partner, and seventeen (17) other individuals and entities as limited partners (collectively "Alto Tech Partnership").  Wahl Decl. ¶ 2.  The relationship between ATV, the SBA as the Preferred Limited Partner, and the other limited partners was governed by a contract titled the Agreement of Limited Partnership of Alto Tech II, LP ("Partnership Agreement").  Wahl Decl. ¶ 3; Ex. A.  Defendants Wahl and Lee, as managers for ATV, signed the Partnerhsip Agreement.  Wahl Decl. ¶ 3; Lee Decl. ¶ 2.  The Partnership

---

[2]  Gerry McClure has served as the Principal Agent to the United States Small Business Administration in its capacity as the court-appointed receiver for Alto Tech since June 2006, and submitted a declaration in support of the SBA's Motion.

United States District Court
For the Northern District of California

4

United States District Court
For the Northern District of California

Agreement provides that it is to be governed by and construed in accordance with Delaware law.  Partnership Agreement ¶ 10.10.  The Partnership Agreement also provides that the formulation of investment policy was vested exclusively in ATV, as the general partner to Alto Tech.  Partnership Agreement ¶ 3.01(a).

ATM is a California limited liability company which was formed to provide management and advisory services to Alto Tech.  Wahl/Lee Answer ¶ 21; Wahl Decl. ¶ 5.  On April 20, 2000, ATM entered into a Management Services Agreement ("Management Agreement") with Alto Tech for these services.  Wahl Decl. ¶ 5; Ex. B.  Until Triant resigned on November 1, 2003, Wahl, Lee, and Triant were the sole managing members of ATM.  Wahl Decl. ¶ 5; Triant Decl. ¶ 3; Ex. A.  The Management Agreement states that it shall be governed by and construed in accordance with California law.  Management Agreement ¶ 11.

**B.   The Optiva Deal**

In late 2001, Alto Tech was approached by a company named Optiva, Inc.  Lee Decl., Docket No. 44, ¶ 4.  Optiva was a developer and manufacturer of advanced nanomaterials for use in various optical, imaging, and display applications.  Id. Following the meeting with Optiva, Defendants Wahl, Lee, and Triant agreed that Lee would conduct further due diligence regarding Optiva.  Id.  According to a Complaint subsequently filed by Alto Tech against Optiva, Alto Tech initially decided not to invest in Optiva.  Pl.'s Request for Judicial Notice, Docket

5

No. 50, Ex. E.[3]   In March 2002, Optiva hired Defendant Wahl's husband, Andrew Wahl, as its chief financial officer and then promoted him to chief operating officer in May 2002.   Andrew Wahl Decl. ("A. Wahl Decl."), Docket No. 45, ¶ 2; Wahl Decl. ¶ 6; McClure Decl. Ex. E.   Subsequent to the hiring of Andrew Wahl by Optiva, in June 2002, Alto Tech decided to invest $1.5 million in Optiva.   Wahl Decl. ¶ 6; Lee Decl. ¶ 6; Triant Decl. ¶ 7.   Prior to the Optiva investment, Defendant Lee learned that Optiva was securing additional funding from several venture capital firms that specialized in investing in nanotechnology firms.   Lee Decl. ¶ 4.   In addition, Lee discovered that other major institutional investors of Optiva, including JP Morgan Partners, Korea's Daehong Corp., DSM N.V., and Eastman Chemical Company were also considering investing in a larger second round of financing.   Id. Moreover, in March 2002, Optiva announced the first commercial order that was using its technology.   Id. ¶ 5.   Finally, in May 2002, Lee learned that Optiva entered into a manufacturing agreement for the production of products using Optiva's technology.   Id.   On June 6, 2002, Alto Tech invested $1.5 million in Optiva (the "Optiva Investment").   Id. ¶ 6.   Defendants Wahl, Lee, and Triant agreed that because of her husband's position as CEO of Optiva, Defendant Wahl would not be involved with any decisions relating to the Optiva Investment.   Wahl Decl. ¶ 6; Lee Decl. ¶ 7; Triant Decl. ¶ 7.

///

---

[3]   Defendants' objections to Plaintiff's RJN are discussed below.

6

United States District Court
For the Northern District of California

C.   **Alto Tech's Lawsuit and Optiva's Failure**

Andrew Wahl left Optiva in July 2003.  A. Wahl Decl. ¶ 6.
Alto Tech became increasingly concerned with Optiva's performance
and, in April 2004, filed a lawsuit against Optiva and members of
its Board of Directors for various securities violations.  Lee
Decl. ¶ 12.  That action, which was brought in this district and
was before the Honorable Judge Armstrong, ultimately ended in a
settlement whereby Alto Tech recovered $250,000 of its original
$1.5 million.  Lee Decl. ¶ 12; see also, Alto Tech II, LP v.
Optiva, Inc., et al., Case No. C 04-1464 SBA (N.D. Cal. 2004).  By
the time the settlement was reached in the summer of 2005, Optiva
had gone out of business and executed a general assignment for the
benefit of creditors.  McClure Decl. ¶ 15; Ex. N; Lee Decl. ¶ 12.

D.   **The SBA Action**

In 2004, the SBA began investigating Alto Tech's investment
in Optiva, and on July 27 of that year, sent a letter to
Defendants seeking additional information regarding the facts and
circumstances surrounding the Optiva Investment.  McClure Decl. ¶
8; Ex. D.  Specifically, the letter indicated that the Optiva
Investment may have violated 13 C.F.R. § 107.30, addressing
conflicts of interest, "[t]he husband of Gloria Wahl, one of [Alto
Tech's] General Partners, held senior executive positions with
Optiva at the time of Alto Tech's investment."  McClure Decl. Ex.
D.  In subsequent correspondence with the SBA, Defendant Wahl
made, among others, the following statements:

> Based on our conversation, we have made a
> full review of our investment in Optiva,
> Inc., on [sic] June 2002.  After review

7

1
2
3
4
5
6

and in consultation with Mike Staebler of
Pepper Hamilton LLC, we acknowledge that
Alto Tech should have terminated its
discussions with Optiva and reversed its
decision to go forward once Optiva had
retained Andrew Wahl. . . .   We now
understand that regardless of when a
conflict arises in the investment cycle,
an SBIC may not invest in a company when
a conflict exists.

7   McClure Decl. Ex. F (letter from Gloria Wahl to Steve Knott,

8   Financial Analyst - Investment Division, U.S. Small Business

9   Administration, dated July 27, 2004).

10
11
12
13
14
15
16

We . . . hope that our mis-step in making
the Optiva investment without prior
approval will not cause you to take
regulatory actions . . . .   We realize
the seriousness of the Conflict of
Interest rules contained in Regulation
107.730 and Tech Note #8.   Our mistake
was truly inadvertent, as we did not
realize (although we know we should have
realized) that employment of Andrew Wahl
caused the Company [Optiva] to be our
Associate.

17   McClure Decl. Ex. H (letter from Gloria Wahl in her capacity as

18   manager to ATV, to Marja Maddrie, Director, Office of SBIC

19   Operations, U.S. Small Business Administration, dated August 24,

20   2004).

21
22
23
24
25
26
27

In March 2002, Mr. Wahl became CFO of
Optiva and was promoted to CEO in May
2002. It was then we made a mistake. We
did not adequately review the SBIC
Regulations or consult with our SBIC
counsel, Mike Staebler. Instead, we
assumed that it was appropriate for the
SBIC to continue to consider the
investment so long as Gloria Wahl recused
herself from all involvement in due
diligence, negotiations and the making of
the investment decision. These
activities were carried out by our other

28

8

United States District Court
For the Northern District of California

two Principals, Thanos Triant and Walter
Lee.  We obviously should have sought
SBA's prior approval.  We realize that
ignorance is not an acceptable excuse,
but we wish to assure you that the
mistake was an honest one . . . .

McClure Decl. Ex. I (letter from Gloria Wahl to Thomas Morris,
Director - Office of Liquidation, U.S. Small Business
Administration, dated March 17, 2006).[4]

In June 2006, the United States, on behalf of its agency the
SBA, filed suit in this Court against Alto Tech for receivership
and injunctive relief.  United States v. Alto Tech II, L.P., Case
No. 06-3879 SC (N.D. Cal. 2006) (Docket No. 1).[5]  The Court signed
a Stipulation for Consent Order of Receivership, appointing the
SBA as Receiver for "the purpose of marshalling and liquidating in
an orderly manner all of Alto Tech's assets and satisfying the
claims of creditors therefrom in the order of priority as
determined by this Court."  Id., Docket No. 4.

In its capacity as Receiver for Alto Tech, the SBA brought
the present action after determining that Defendants' investment
in Optiva violated a conflict-of-interest provision of the
Regulations.  The SBA's Complaint contains causes of action for
(1) breach of fiduciary duty, (2) negligence, (3) breach of the

_____

[4]  Defendant Triant's objections to these letters are
discussed below.

[5]  The case was initially assigned to the Honorable Magistrate
Judge Chen.  Id.  After Alto Tech filed its notice declining to
proceed before a Magistrate Judge, the matter was eventually
transferred to this Court.  Docket Nos. 44, 60.  Magistrate Judge
Chen previously found that the action now before this Court was not
related to United States v. Alto Tech II, L.P., 06-3879.  Docket
No. 38.

1  partnership agreement and (4) breach of the management agreement.

2

3  **IV.  PRELIMINARY MATTERS**

4      Before addressing the merits of the Motions, the Court

5  addresses various issues raised by the parties.

6      **A.  Timeliness of Defendant Triant's Motion**

7      On April 25, 2008, this Court issued a Status Conference

8  Order Setting Times for Compliance with Certain Rules of Court

9  ("Status Order").  Docket No. 40.  In that Order, the Court stated

10 that trial was set for January 20, 2009, and that the "last

11 hearing date for motions, to be noticed in accordance with Civil

12 Local Rule 7-2, is <u>December 5, 2008</u>."  <u>Id.</u> (emphasis in original).

13 Civil Local Rule 7-2 requires that "all motions must be filed,

14 served and noticed in writing on the motion calendar of the

15 assigned Judge for hearing not less than 35 days after service of

16 the motion."

17     Defendant Triant filed his Motion for Summary Judgment on

18 November 14, 2008, less than 35 days before the last hearing date

19 for motions.  In light of these facts, the SBA has requested that

20 the Court strike Triant's Motion.

21     The Status Order states that "Failure to strictly comply with

22 each provision of this order will be deemed sufficient grounds to

23 impose sanctions."  <u>Id.</u>  Moreover, Defendant Triant has provided

24 absolutely no justification for his late submission.  Nonetheless,

25 Federal Rule of Civil Procedures 56 provides that motions for

26 summary judgment "must be served at least 10 days before the day

27 set for the hearing."  Fed. R. Civ. P. 56(c).  The tension between

28

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

this rule and Civil Local Rule 7-2 is resolved in the Commentary for Civil Local Rule 56-1, titled "Time and Content of Motion for Summary Judgment."  The Commentary states: "FRCivP 56 allows summary judgment motions to be served 10 days before the hearing . . . .  While the Court may not preclude a party from proceeding in accordance with the Federal Rules, it may reschedule the hearing to allow a party an opportunity to respond . . . ."  Civ. L.R. 56-1 Commentary.  Accordingly, the SBA's request to strike Triant's Motion is DENIED.

**B.    Request for Judicial Notice**

The SBA submitted a Request for Judicial Notice ("RJN"), Defendants Wahl/Lee opposed the RJN, and the SBA submitted a Reply.  Docket Nos. 50, 60, 79.

"Notice is a way to establish the existence of facts without evidence."  Castillo-Villagra v. INS, 972 F.2d 1017, 1026 (9th Cir. 1992).

> In federal courts, notice may be taken of facts relating to the particular case, though no evidence is introduced, where the fact is "not subject to reasonable dispute," either because it is "generally known within the territorial jurisdiction," or is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Id. (citing Fed. R. Evid. 201(b)).

The SBA's RJN seeks notice of four documents.  The first two are the Answers to Complaint submitted by Defendants Wahl/Lee and by Defendant Triant in the present action.  Docket Nos. 10, 11. As these documents are already part of the record in this case,

11

**United States District Court**
For the Northern District of California

and because the SBA has provided no argument for why judicial notice of these documents would be necessary, the RJN is DENIED with respect to the Defendants' Answers to Complaint.

The third document in the RJN is a Stipulation for Consent Order of Receivership filed in the case <u>United States v. Alto Tech II L.P.</u>, No. 06-3879 EMC, (N.D. Cal. 2006).  Defendants do not object to judicial notice of this document.  Accordingly, the RJN of this Stipulation is GRANTED.

The final document in the RJN is the Complaint filed in the prior action captioned <u>AltoTech II, LP v. Optiva, Inc.</u>, No. 04-1464 SBA (N.D. Cal. 2004) (hereinafter "Optiva Complaint").  In that action, Alto Tech brought fifteen causes of action against Optiva, including various theories of securities fraud, breach of contract, breach of fiduciary duty, negligence, and unjust enrichment.  RJN Ex. E, Optiva Compl. ¶ 40.  The action was the result of Alto Tech's investment of $1.5 million in Optiva and Optiva's subsequent collapse.

The Ninth Circuit has "held that taking judicial notice of findings of fact from another case exceeds the limits of Rule 201."  <u>Wyatt v. Terhume</u>, 315 F.3d 1108, 1114 (9th Cir. 2003); <u>see also M/V Amer. Queen v. San Diego Marine Constr. Corp.</u>, 708 F.2d 1483, 1491 (9th Cir. 1983) (stating "[a]s a general rule, a court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it").  Courts may, however, take judicial notice of the fact that documents have been filed in another case.  <u>See United States ex</u>

United States District Court
For the Northern District of California

1  <u>rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d

2  244, 248 (9th Cir. 1992) (holding that courts "may take notice of

3  proceedings in other courts . . . if those proceedings have a

4  direct relation to the matters at issue") (internal quotation

5  marks omitted).  At the very least, this Court may take notice of

6  the fact that the Optiva Complaint was filed in the prior action.

7       The SBA, however, also seeks to have the Court take notice of

8  several allegations contained within the Optiva Complaint and

9  construe the allegations as admissions by a party-opponent

10 pursuant to Federal Rule of Evidence 801(d)(2).  The most

11 prominent allegation at issue reads:

12          Although AltoTech decided not to invest
            in Optiva in late 2001, in or about mid-
13          January 2002, Optiva appointed new
            members to its Board of Directors, and
14          revised its business plan.  Among the new
            Board Members, Optiva appointed Andrew
15          Wahl as Executive Vice President and
            Chief Financial Officer, and later as
16          President and Chief Executive Officer.
            AltoTech believed that these were
17          positive changes, and decided to
            reconsider whether to invest in Optiva.
18

19 Optiva Compl. ¶ 40.  Defendants argue that the Court cannot take

20 judicial notice of facts alleged in the Optiva Complaint and that,

21 in the alternative, the facts alleged are inadmissable hearsay.[6]

22      It is undisputed that at the time Alto Tech made its

23 investment in Optiva, Defendants Wahl, Lee, and Triant were the

24 only managing members of ATV, the Delaware limited liability

25

26      [6]  The factual allegations in the Complaint are not
   dispositive to any of the motions now before the Court.  As the
27 parties have raised the issue, however, the Court addresses it.

28
                              13

company formed for the purpose of acting as Alto Tech's general partner, and were also the only managing members of ATM, the California limited liability company that acted as the investment advisor and manager for Alto Tech.  See Wahl/Lee Answer to Complaint ¶¶ 20, 21.  Additionally, pursuant to the Partnership Agreement, "[t]he management and operation of the partnership and the formulation of investment policy is vested exclusively in the General Partner[, i.e., ATV]."  McClure Decl. Ex. A at 13.  Thus, investment decisions were reserved to Wahl, Lee and Triant, acting as the managing members of ATV and ATM.

Moreover, at the time the Optiva Complaint was filed, it is undisputed that although Triant was no longer with ATM or ATV, Wahl and Lee continued to serve as the only two managing members of ATV and ATM.  See Wahl/Lee Answer to Compl. ¶ 22; see also Triant Decl., Docket No. 65, Ex. A (noting Triant's resignation from ATM and ATV, signed by Triant on November 1, 2003).  Accordingly, the allegations in the Optiva Complaint could only have been authorized by Wahl and Lee.

Federal Rule of Evidence 801 states, in part, that an admission by a party-opponent is not hearsay if the "statement is offered against a party and is . . . (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  Fed. R. Evid. 801(d)(2).

There can be no dispute that the attorney who wrote the

14

Optiva Complaint did so at the behest of Alto Tech, which, at that time, was controlled by Defendants Wahl and Lee.  Moreover, by signing the Optiva Complaint, the attorney certified, pursuant to Rule 11, that "the factual contentions have evidentiary support . . . ."  Fed. R. Civ. P. 11(b)(3).  The Court therefore finds that the above-referenced allegations may come in as evidence under Federal Rule of Evidence 801.

Furthermore, even if the allegations did not fit within a hearsay exemption, the Court would likely be able to take judicial notice of them anyway.  See Borneo, 971 F.2d at 248 (holding that courts "may take notice of proceedings in other courts . . . <u>if those proceedings have a direct relation to the matters at issue</u>") (internal quotation marks omitted, emphasis added).

For the reasons above, Defendants' objections to the SBA's RJN are OVERRULED.

### C.   Motion to Strike

Defendant Triant filed what is styled as "Evidentiary Objections to Unsupported Allegations; Notice of Motion and Motion to Strike Unsupported Allegations."  Docket No. 64 (hereinafter "Motion to Strike").  In this Motion to Strike, Triant objects to various statements relied upon by the SBA in its Motion for Summary Judgment.  For example, Triant strenuously objects to the SBA's use, in support of its Motion, of letters written by Defendant Wahl.  Triant argues that because he "never read, saw, approved, or knew of these letters," they are hearsay.  Mot. to Strike at 2-3.

Whether Triant ever read, saw, approved of, or knew about

these letters is largely irrelevant to the issue of whether they constitute hearsay against Triant.[7]  More importantly for Triant, Wahl's letters were written in July and August of 2004, approximately 9 months after Triant had resigned his positions with ATV and ATM.  Therefore, even under the party admission theories governing partnerships and directors of corporations, Wahl's letters cannot be considered admissions by Triant.  <u>See</u>, <u>e.g.</u>, <u>United States v. Saks</u>, 964 F.2d 1514, 1524 (5th Cir. 1992) (noting that "the general rule at common law was that the declarations of one partner made during the existence of the partnership and in relation to its affairs are admissible against the other partners even if the declarant is not a party to the action" and that the court had "no reason to believe that Congress departed from this rule when it enacted the Federal Rules of Evidence in 1975"); <u>Mahlandt v. Wild Canid Survival & Research Ctr.</u>, 588 F.2d 626, 630 (8th Cir. 1978).  In the end, however, although the Court or an eventual trier of fact may not consider these letters in relation to Triant, the driving issue in this case is not whether Wahl and Lee thought they may have done something wrong, but whether the actions of Wahl, Lee, and Triant at the time of the investment in Optiva contravened various regulations and state laws.

Triant also objects to the SBA's use of the Optiva Complaint. Triant objects for many of the same reasons Wahl and Lee object

_____

    [7]  As discussed above, the letters are clearly admissions of a party-opponent by Wahl, and, furthermore, may be construed as party admissions by both ATM and ATV, within whose capacities Wahl was acting.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   and, for the reasons discussed above, these objections are

2   overruled.  Triant also argues that because he had resigned from

3   both ATV and ATM at the time the Optiva Complaint was filed, the

4   factual allegations within the Optiva Complaint cannot be imputed

5   to him.  As discussed above, it is undisputed that Triant was not

6   part of ATM or ATV at the time the Optiva Complaint was filed.

7   Accordingly, any facts or inferences drawn from the Optiva

8   Complaint may be attributed to Wahl and Lee, but not Triant.

9        Triant's remaining objections are either without merit or

10  improperly seek to strike arguments made by the SBA in its Motion.

11  For the reasons discussed, Triant's objections are SUSTAINED IN

12  PART and OVERRULED IN PART.

13

14  **V.   LEGAL STANDARD**

15       Entry of summary judgment is proper "if the pleadings, the

16  discovery and disclosure materials on file, and any affidavits

17  show that there is no genuine issue as to any material fact and

18  that the movant is entitled to judgment as a matter of law."  Fed.

19  R. Civ. P. 56(c).  "Summary judgment should be granted where the

20  evidence is such that it would require a directed verdict for the

21  moving party."  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250

22  (1986).  Thus, "Rule 56(c) mandates the entry of summary judgment

23  . . . against a party who fails to make a showing sufficient to

24  establish the existence of an element essential to that party's

25  case, and on which that party will bear the burden of proof at

26  trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

27

28                                  17

1    **VI.   REGULATORY FRAMEWORK**

2    "The [SBI] Act was passed for the purpose of making loans

3    available to those engaged in comparatively small enterprises who

4    cannot obtain adequate borrowed funds through customary financial

5    institutions." First La. Inv. Corp. v. United States, 351 F.2d

6    495, 497 (5th Cir. 1965).  "To make this objective operative, the

7    Congress provided for the Small Business Investment Companies to

8    channel Federal funds into the hands of those for whose primary

9    benefit the Act was passed." Id.  In qualifying under the Act and

10   obtaining a license as provided in the Act, companies submit

11   themselves to all of the terms and conditions prescribed by the

12   Act.  Id.  In addition, the Act authorizes the SBA to prescribe

13   regulations governing the operations of SBICs.  15 U.S.C. §

14   687(c).  Pursuant to this authority, the SBA has promulgated

15   regulations reported in Part 107 of Title 13 of the Code of

16   Federal Regulations (the "Regulations").  SBICs are required to

17   comply with all provisions of the Act and Regulations, which

18   together impose reporting requirements, limitations, and personal

19   liability for the activities of SBICs' managers, partners,

20   officers, directors, employees and shareholders.  In part, the

21   Regulations state:

22         (a)   Violation by licensee deemed
            violation by persons participating:
23         Wherever a licensee violates any
            provision of this chapter or regulation
24         issued thereunder by reason of its
            failure to comply with the terms thereof
25         or by reason of its engaging in any act
            or practice which constitutes or will
26         constitute a violation thereof, such
            violation shall be deemed to be also a
27         violation and an unlawful act on the part

28                              18

**United States District Court**
For the Northern District of California

of any person who, directly or indirectly, authorizes, orders, participates in, or causes, brings about, counsels, aids, or abets in the commission of any acts, practices, or transactions which constitute or will constitute, in whole or in part, such violation.
(b) <u>Breach of fiduciary duty</u>: It shall be unlawful for any officer, director, employee, agent, or other participant in the management or conduct of the affairs of a licensee to engage in any act or practice, or to omit any act, in breach of his fiduciary duty as such officer, director, employee, agent, or participant, if, as a result thereof, the licensee has suffered or is in imminent danger of suffering financial loss or other damage.

15 U.S.C. § 687f.

Pursuant to the Regulations, an Associate of a Licensee is defined as, <u>inter alia</u>, the following:

(1)(i) An officer, director, employee or agent of a Corporate Licensee;
(ii) A Control Person, employee or agent of a Partnership Licensee;
(iii) An Investment Adviser/Manager of any Licensee, including any Person who contracts with a Control Person of a Partnership Licensee to be the Investment Adviser/Manager of such Licensee;
. . . .
(3) Any officer, director, partner (other than a limited partner), manager, agent, or employee of any Associate described in paragraph (1) or (2) of this definition.
. . . .
(5) Any Person that directly or indirectly Controls, or is Controlled by, or is under Common Control with, any Person described in paragraphs (1) and (2) of this definition.

13 C.F.R. § 107.50. Based on the foregoing definitions, it is clear that Defendants were Control Persons as defined by the

19

United States District Court
For the Northern District of California

Regulations and were Associates of the Licensee, Alto Tech.  The
Regulations further define an Associate as "[a]ny Close Relative
of any person described" above.  Id. § 107.50(6).  A "Close
Relative" includes "a current or former spouse."  Id. §
107.50(11).  Thus, Andrew Wahl, as Gloria Wahl's husband, was an
Associate of Alto Tech.

At the heart of the SBA's claim is 13 C.F.R. § 107.730,
titled "Financings which constitute conflicts of interest."  In
particular, § 107.730 states, in part, that unless prior written
exemption from the SBA is obtained, financing may not be provided
by the Licensee to any of its Associates.  13 C.F.R. §
107.730(a)(1).  The SBA claims that by investing in Optiva without
obtaining prior written consent from the SBA, Defendants violated
§ 107.730(a)(1).

**VII. <u>DISCUSSION</u>**

Violations of the Regulations, in and of themselves, do "not
give rise to liability."  <u>Echevarria</u>, 864 F. Supp. at 1260.
Rather, an "SBIC found in violation of SBA [R]egulations faces
only the loss of its license and a federal receivership to
administer its assets."  Id.; see also 15 U.S.C. § 687(d) (stating
"[s]hould any small business investment company violate or fail to
comply with any of the provisions of this chapter or of
regulations prescribed hereunder, all of its rights, privileges,
and franchises derived therefrom may thereby be forfeited"); 15
U.S.C. § 687c.  As noted above, the SBA in the present action
asserts causes of action under Delaware and California state law.

20

Nonetheless, because the SBA's causes of action all are premised in some form on Defendants' alleged violation of the Regulations, the Court first addresses this violation.  The Court then addresses the SBA's claim that by violating the Regulations, Defendants also violated various state laws.

### A.   Regulatory Violation

As noted above, the SBA claims that Defendants violated 13 C.F.R. § 107.730, titled "Financings which constitute conflicts of interest."  Section 107.730 states that unless prior written exemption from the SBA is obtained, financing may not be provided by the Licensee to any of its Associates.[8]  13 C.F.R. § 107.730(a)(1).  The SBA claims that by investing in Optiva without obtaining prior written consent from the SBA, Defendants violated § 107.730(a)(1).

Defendants Wahl and Lee essentially concede that they violated § 107.730.  See, e.g., Wahl/Lee Opp'n at 8-9 (stating "the Partnership only failed to strictly comply with the terms of Section 107.730 by not seeking the approval of the SBA before making the Optiva investment.  This failure to fully comply with conditions set forth in Section 107.730 . . . .");  see also letters from Wahl to SBA, discussed in section II, supra.

Defendant Triant, however, argues that there was not even an underlying violation of § 107.730(a) because the Optiva investment qualified under several exceptions.  In its entirety, § 107.730(a) provides:

---

[8]   In the parlance of the SBA, an SBIC is also referred to as a "Licensee."  See Echevarria, 864 F. Supp. at 1261.

1          (a) General rule. You must not self-deal
   to the prejudice of a Small Business, the
2   Licensee, its shareholders or partners,
   or SBA. Unless you obtain a prior written
3   exemption from SBA for special instances
   in which a Financing may further the
4   purposes of the Act despite presenting a
   conflict of interest, you must not
5   directly or indirectly:
          (1) Provide Financing to any of your
6   Associates.

7   13 C.F.R. § 107.730(a)(1).

8          Triant asserts that §§ 107.730(d) and (e) provide exceptions

9   under which the Optiva investment qualified, thereby obviating the

10  need for prior written approval from the SBA.   Section 107.730(d)

11  states:

12          (d)  Financings  with  Associates--(1)
   Financings with Associates requiring
13   prior approval.  Without SBA's prior
   written approval, you may not Finance any
14   business in which your Associate has
   either a voting equity interest, or total
15   equity interests (including potential
   interests), of at least five percent.
16

17  13 C.F.R. § 107.730(d)(1).[9]

18          Section 107.730(d)(1), however, by its very language applies

19  to situations where an SBIC and one of its Associates both invest

20  in the same business and the Associate has either a voting equity

21  interest or total equity interests equal to or greater than five

22  percent.   In the present situation, it is beyond dispute that not

23  only is Andrew Wahl an Associate to Alto Tech, given his spousal

24  relationship with Gloria Wahl, but Optiva itself, in light of

25  Andrew Wahl's position as CFO and then CEO, is also considered an

26  ────────────────

27          [9]  It is undisputed that Andrew Wahl had a total equity
   interest in Optiva of less than five percent.

28                                22

United States District Court
For the Northern District of California

Associate of Alto Tech.  <u>See</u> 13 C.F.R. § 107.50 (stating

"Associate of a Licensee means any of the following: . . . (8) Any

concern in which -- (i) Any person described in paragraphs (1)

through (6) of this definition is an officer, general partner, or

managing member . . . ."[10]  13 C.F.R. § 107.50(8)(i).  Contrary to

Triant's argument, therefore, 13 C.F.R. § 107.730(d)(1) does not

apply when the business in which the investment is made is itself

an Associate of the Licensee.

Triant also argues that § 107.730(d)(3)(ii) provides an

exception to § 107.730(a).  Section 107.730(d)(3) enumerates

various exceptions to § 107.730(d).  Because, for the reasons just

stated, § 107.730(d) does not apply to the present action, its

exceptions are therefore also inapplicable.

Finally, Triant argues that 107.730(e) provides exceptions

under which the Optiva investment would be permitted without

written consent by the SBA.  Section 107.730(e) states:

> (e) Use of Associates to manage Portfolio
> Concerns. To protect your investment, you
> may designate an Associate to serve as an
> officer, director, or other participant
> in the management of a Small Business.
> You must identify any such Associate in
> your records available for SBA's review
> under § 107.600.  Without SBA's prior
> written approval, the Associate must not:
> (1) Have any other direct or
> indirect financial interest in the
> Portfolio Concern that exceeds, or
> has the potential to exceed, 5
> percent of the Portfolio Concern's

---

[10]   Section (6) provides that "Any Close Relative of any Person
described in paragraphs (1), (2), (4), and (5) of this definition.
"Close Relative" includes spouses. 13 C.F.R. § 107.50.  Thus, as
Gloria Wahl's spouse, Andrew Wahl qualifies as an Associate, as
does the company, Optiva, in which he was an officer.

1    equity.
     (2) Have served for more than 30
2    days as an officer, director or
     other participant in the management
3    of the Portfolio Concern before you
     provided Financing.
4    (3) Receive any income or anything
     of value from the Portfolio Concern
5    unless it is for your benefit, with
     the exception of director's fees,
6    expenses, and distributions based
     upon the Associate's ownership
7    interest in the Concern.

8    13 C.F.R. § 107.730(e).

9         Most importantly, this section permits a Licensee to

10   designate an Associate to serve in the management of a Small

11   Business in which the Licensee has invested.  In the present case,

12   it is clear from the undisputed facts that Alto Tech did not, in

13   seeking to protect its investment, designate Andrew Wahl to serve

14   in Optiva.  Rather, Andrew Wahl was hired by Optiva independently

15   of any action by Alto Tech.

16        Even if this were inapplicable, section 107.730(e) would

17   still not apply, as section (2) requires that the Associate have

18   served 30 days or less before the financing was provided.  Optiva

19   hired Andrew Wahl in March 2002 and Alto Tech did not invest in

20   Optiva until June 2002.  In addition, Andrew Wahl received a

21   salary and stock options from Optiva, thus contravening section

22   (3) of 107.730(e).

23        For all of the reasons discussed above, the Court concludes

24   that Defendants were in violation of 13 C.F.R. § 107.730(a) when

25   they invested in Optiva without obtaining the requisite written

26   approval from SBA.

27   ///

28
                                  24

1          **B.    Causes of Action**

2          The SBA asserts causes of action for breach of fiduciary

3     duty, negligence, breach of contract under the Partnership

4     Agreement, and breach of contract under the Management Agreement.

5              1.    Statutes of Limitations and Choice of Law

6          The SBA, in an argument relegated to a footnote, asserts that

7     the "breach of contracts and torts related to the Partnership

8     Agreement are governed by Delaware law" and "California law

9     applies to the breach of contract and tort claims related" related

10    to the alleged breach of the Management Agreement.   SBA Mot. at 8

11    n.7.   Fortunately, the Court need not attempt to untangle the

12    SBA's choice of law argument; even taking the SBA's unconventional

13    theory at its face, it is clear that all but the cause of action

14    for breach of contract under the Management Agreement are barred

15    by applicable statutes of limitations.

16         The SBA concedes that "[e]ach cause of action under [the

17    negligence, breach of fiduciary duty, and breach of contract under

18    the Partnership Agreement] is subject to a three-year statute of

19    limitation under Delaware law.   Del. Code Ann. tit. 10, § 8106."

20    SBA Opp'n to Wahl/Lee Mot. at 2.   The Optiva Investment was made

21    on June 6, 2002.   Normally, this event would trigger the running

22    of the limitations period.   See David B. Lilly Co., Inc. v.

23    Fisher, 18 F.3d 1112, 1117 (3rd. Cir. 1994) (stating "[u]nder

24    Delaware law, the statute of limitations generally 'begins to run

25    at the time of the wrongful act, and, ignorance of a cause of

26    action, absent concealment or fraud, does not stop it'") (citing

27    Isaacson, Stolper & Co. v. Artisan's Sav. Bank, 330 A.2d 130, 132

28                                    25

(Del. 1974)).

Statutes of limitations are affirmative defenses and Defendants therefore bear the burden of proving that the SBA's action is time-barred.  See Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119, 1123 (9th Cir. 2007).  It is clear, however, that unless the statutes are tolled for some reason, the SBA's action was filed outside of the applicable limitations periods.  The consent order appointing the SBA as Receiver was signed on June 21, 2006.  This order preserved for the Receivership Estate any claims of the partnership that were still viable as of that date.  See SBA Opp'n to Wahl/Lee Mot. at 2 n.3. Therefore, barring tolling, more than four years elapsed between the triggering event (the investment) and the consent order.

Under Delaware law, a statute of limitations may be tolled until the grieved party knows or has reason to know the facts constituting the alleged wrong.  See, e.g., Kahn v. Seaboard Corp., 625 F.2d 269, 277 (Del. Ch. 1993) (holding that "where wrongful self-dealing is alleged in a derivative action, the statute [of limitations] does not run against the plaintiff until he or she knew or had reason to know the facts alleged to give rise to the wrong").  California law is similar and provides that, under the discovery rule, where harm created by a defendant is not reasonably discoverable by plaintiffs until a future time, a statute of limitations may be tolled.  See Apr. Enters., Inc. v. KTTV, 147 Cal. App. 3d 805, 832 (Ct. App. 1983) (stating "we hold the discovery rule may be applied to breaches which can be, and are, committed in secret and, moreover, where the harm flowing

United States District Court
For the Northern District of California

from those breaches will not be reasonably discoverable by

plaintiffs until a future time").  Moreover, "[i]t is plaintiff's

burden to establish facts showing that he was not negligent in

failing to make discovery sooner and that he had no actual or

presumptive knowledge of facts sufficient to put him on inquiry."

Id. (internal quotation marks omitted).

The SBA argues, under various theories, that it is entitled

to tolling of the limitations periods because it had no way of

knowing that Gloria Wahl and Andrew Wahl were husband and wife.

For the following reasons, the Court concludes that although some

tolling is appropriate, even with this tolling three of the four

causes of action brought by the SBA are barred by applicable

statutes of limitations.

On May 16, 2003, Alto Tech held its annual partners meeting

in California.  Wahl Decl. ¶ 6.  At this meeting, both Andrew and

Gloria Wahl made a presentation about Optiva and answered

questions from the limited partners.  See A. Wahl Decl. ¶ 4; Wahl

Decl. 7.  Wahl, in her declaration, states: "It was made

explicitly clear to the Partnership at the Annual Partners Meeting

that Andrew Wahl and I were married."  Wahl Decl. ¶ 7.  Andrew

Wahl and Defendant Triant state the same in their declarations.

Triant Decl. ¶ 11; A. Wahl Decl. ¶ 5.[11]  Moreover, another limited

---

[11]  As an aside, the Court notes the troubling inconsistencies
between the declaration submitted by Andrew Wahl on October 31 of
this year, in which he states that at the partnership meeting,
"[i]t was made explicitly clear to ALT's Partnership that Gloria
Wahl and I were married," Andrew Wahl Decl. ¶ 4, and his deposition
testimony taken a mere 3 weeks later, where he testified that he
did not remember discussing with anyone at that meeting his
relationship with Gloria Wahl and did not remember the subject even

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    partner of Alto Tech who is not involved with the present action

2    submitted a declaration stating that at the annual partners

3    meeting, "Andrew Wahl was mentioned and a statement was made to

4    the attendees that Andrew Wahl was Gloria Wahl's husband."  Leung

5    Decl., Docket No. 61, ¶ 3.[12]

6         It is uncontested that an SBA representative, Ian Zabor,

7    participated in the partners meeting by telephone.  Zabor Decl.,

8    Docket No. 49, ¶ 3; Wahl Decl. ¶ 8.  Zabor was employed by the SBA

9    as a SBIC Program Analyst from November 2002 through August 2003.

10   Zabor Decl. ¶ 2.  Zabor's duties included reviewing the

11   operations, finances and underlying investments of a number of

12   SBICs, including Alto Tech.  Zabor, contrary to the declarations

13   of Gloria Wahl, Andrew Wahl, Eddie Leung, and Thanos Triant,

14   claims that he does not remember the Wahls' relationship being

15   disclosed at that partners meeting, stating:

16            To the best of my knowledge and
              recollection, I was not informed at that
17            meeting, or any other time[,] of the
              relationship among Gloria Wahl, Andrew
18            Wahl, and Optiva, Inc.  Specifically, I
              do not recall being told that Andrew Wahl
19            and Gloria Wahl were married at the time
              Alto Tech provided financing to Optiva,
20            Inc., a company that employed Andrew Wahl
              as its Chief Executive Officer.  These

21

22   coming up.  See Decl. of Margaret Sell, counsel for SBA, Docket No.
     78, Ex. A at 57.  In light of the fact that Andrew Wahl's
23   declaration was submitted before his deposition, and because his
     declaration is supported by almost all of the additional evidence,
24   this inconsistency, while worth noting, is insufficient to defeat
     summary judgment.
25

26        [12]  Still another limited partner not a party to the present
     action was told by Defendant Lee as early as June 2002 that Andrew
27   Wahl was Gloria Wahl's husband.  See Leiderman Decl., Docket No.
     62, ¶ 2.
28
                                    28

United States District Court
For the Northern District of California

1                           are facts I would expect to remember as I
2                           was absolutely aware that insider
                          financings were prohibited.

Zabor Decl. ¶ 4.  The fact that Zabor does not remember being

informed, however, is insufficient, in light of the totality of

the evidence, to create a triable issue of fact regarding whether

the SBA and the other limited partners were on notice of the

Wahls' marriage.

     As additional evidence of the disclosure of their

relationship, Gloria Wahl submitted a copy of a Powerpoint

presentation she made at the partners meeting.  Wahl Decl. Ex. C.

Andrew Wahl, as CEO of Optiva, participated in the presentation.

A. Wahl Decl. ¶ 4.  Included in the copy of the Powerpoint

presentation is a section detailing new investments made by Alto

Tech and prominently listing Optiva.  Wahl Decl. Ex C. at 0042.

Under a section titled "Portfolio Company Data," Andrew Wahl is

listed as CEO.  Id. at 0055.

     Furthermore, quarterly reports and annual financial

statements for 2002 listing Optiva as one of Alto Tech's new

investments were sent to all of the limited partners, thereby

putting them on notice of the investment in Optiva.  This, in

combination with the presentation at the partnership meeting by

both Andrew and Gloria Wahl would have put the SBA and other

limited partners on notice that Gloria and Andrew Wahl were

husband and wife.  Zabor's inability to recall whether he heard

this disclosure is not enough for the SBA to claim that it and the

other limited partners were not told about the relationship.

United States District Court
For the Northern District of California

1    The SBA further argues that in order for the statute of

2    limitations period to be triggered, every limited partner had to

3    be on notice of the Wahl marriage.  SBA Opp'n to Wahl/Lee Mot. at

4    5.  Under this theory, so long as one limited partner was unaware

5    of the marriage, the statute of limitations period would never be

6    triggered.  In support of this theory, the SBA has presented the

7    declaration of one of the limited partners of Alto Tech.  In this

8    declaration, Gary Kremen states "I do not recall Alto Tech, its

9    managers or any one [sic] else disclosing to me that Alto Tech had

10   invested $1.5 million in a company that employed Gloria Wahl's

11   husband.  If in fact this disclosure had been made, I would have

12   remembered it."  Kremen Decl., Docket No. 49, ¶ 3.  Kremen makes

13   no mention of the partnership meeting.

14   That Kremen might not recall whether certain facts were

15   disclosed to him is insufficient to generate a triable issue of

16   fact when the evidence demonstrates that the disclosure was in

17   fact made.  Furthermore, even if Kremen was not actually aware of

18   the marriage between the Wahls, there was more than enough

19   information to put him on notice had he attended the partners

20   meeting and read the quarterly and annual reports of 2002 which

21   listed Optiva as a new investment.  The law does not operate to

22   protect those who fail to take notice of information readily

23   available to them.  See, e.g., Kahn, 625 F.2d at 277 (holding that

24   "the statute [of limitations] does not run against the plaintiff

25   until he or she knew or had reason to know the facts alleged to

26   give rise to the wrong") (emphasis added).

27   The only law cited by the SBA in support of its argument is a

28

**United States District Court**
For the Northern District of California

1    statute from Delaware that states:

2         A limited partner or an assignee of a
          partnership interest may bring an action
3         in the Court of Chancery in the right of
          a limited partnership to recover a
4         judgment in its favor if general partners
          with authority to do so have refused to
5         bring the action or if an effort to cause
          those general partners to bring the
6         action is not likely to succeed.

7    6 Del. Code § 17-1001.  This statute, however, provides standing

8    for limited partners to sue in Delaware state court when general

9    partners fail or refuse to pursue the action.  In addition, as

10   interpreted by Delaware courts, § 17-1001 merely delineates the

11   statutory requirements for a derivative claim by a limited

12   partner.  <u>See</u>, <u>e.g.</u>, <u>Seaford Funding Ltd. P'ship v. M&M Assoc. II,</u>

13   <u>LP</u>, 672 A.2d 66, 69 (Dec. Ch. 1995) (stating "[b]efore limited

14   partners may bring a derivative claim in The Court of Chancery,

15   Delaware law requires the plaintiffs to make a demand on the

16   general partner to bring the action or explain why they made no

17   demand") (citing 6 Del. Code § 17-1001).

18        The SBA's remaining efforts to avoid the statutes of

19   limitations are unavailing.  For example, the SBA argues that

20   because Alto Tech was eventually able to recover $250,000 from

21   Optiva on August 25, 2005, the SBA's causes of action did not

22   accrue until this date, as at this time the actual amount of

23   damages was known.  This argument, however, for the reasons

24   discussed above, is plainly contrary to law.

25        The evidence demonstrates that the SBA and other limited

26   partners were informed of Gloria and Andrew Wahl's relationship at

27

28
                                    31

the May 16 partners meeting.[13]   The statute of limitations period thus began running on May 16, 2003.  The Order of Consent for the Receivership was not signed until June 21, 2006, more than three years later.  The SBA's claims for breach of fiduciary duty, negligence, and breach of contract under Delaware law are thus time-barred.  The SBA's claim for negligence under California law, to the extent it has even asserted one, is also time-barred, as California has a two-year statute of limitations for negligence claims.  <u>See</u> Cal. Code Civ. Proc. § 339.

The only claim remaining that is not precluded by a statute of limitations is the SBA's claim for breach of the Management Agreement, which is governed by California law.[14]   This claim under California law has a four-year limitations period.  <u>See</u> Cal. Code Civ. Proc. § 337.

### 2.   Breach of Contract for Management Agreement

ATM is a California limited liability company formed to provide management and advisory services to Alto Tech.  The Management Agreement governed the relationship between ATM and Alto Tech.  Until Triant resigned on November 1, 2003, Wahl, Lee, and Triant were the sole managing members of ATM.

The Management Agreement states, in part:

---

[13]   Defendant Triant even asserts that the SBA was "aware of the relationship between Andrew and Gloria Wahl as of, at the very latest, March 3, 2003," a full two months before the partners meeting.  Triant's Opp'n at 22.

[14]   As noted above, the Management Agreement was executed in California and states that it shall be governed by and construed in accordance with California law.  Furthermore, ATM was incorporated as a California limited partnership.

**United States District Court**
For the Northern District of California

> The Management Company [ATM] shall provide the following services to the Partnership in connection with the Partnership's business operations: (a) location, development, investigation, analysis and presentation to the Partnership of suitable investment opportunities, which are consistent with the Partnership's status as an SBIC and with the policies of the Partnership as established from time to time by the Partnership's General Partner.

Management Agreement ¶ 2.  The SBA alleges that Defendants ATM, Wahl, Lee, and Triant breached the terms of this agreement by presenting the Optiva Investment as a suitable investment opportunity consistent with Alto Tech's status as an SBIC under the Act and Regulations when, in fact, the investment violated the Regulations because Defendant Wahl was married to Andrew Wahl and ATM did not procure prior written approval from the SBA.

"Directors and officers are not personally liable on contracts signed by them for and on behalf of the corporation unless they purport to bind themselves individually." Gen. Am. Life Ins. Co. v. Castonguay, Nos. C-89-4434, C-90-1574, 1991 WL 490531, at *5 (N.D. Cal. June 18, 1991) (citing U.S. Liability Ins. v. Haidinger-Hayes, Inc., 1 Cal. 3d 586, 595 (1970)); see also Cal. Corp. Code § 17101(a) (stating "no member of a limited liability company shall be personally liable under any judgment of a court for any . . . liability of the limited liability company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a member of the limited liability company").  This rule, however, is not absolute.

While generally members of a limited

33

United States District Court
For the Northern District of California

1
2
3
4
5
6
7

liability company are not personally
liable for judgments, debts, obligations,
or liabilities of the company "solely by
reason of being a member" (Corp. Code. §
17101, subd. (a)), they are subject to
liability under the same circumstances
and to the same extent as corporate
shareholders under common law principles
governing alter ego liability and are
personally liable under the same
circumstances and extent as corporate
shareholders.

People v. Pac. Landmark, 129 Cal. App. 4th 1203, 1212 (Ct. App.

2005) (internal alterations omitted). Thus, "managers may not be

held liable for tortious or criminal wrongs committed by the

company merely because of their status as managers, but may be

personally liable for their participation in those wrongs." Id.

at 1216; see also Cal. Corp. Code § 17101(b) (stating a "member of

a limited liability company shall be subject to liability under

the common law governing alter ego liability, and shall also be

personally liable under a judgment of a court . . . whether that

liability arises in contract, tort, or otherwise . . .").

    "Shareholders of a corporation are not normally liable for

its torts, but personal liability may attach to them through

application of the 'alter ego' doctrine . . ., or when the

shareholder specifically directed or authorized the wrongful

acts." Wyatt v. Union Mortgage Co., 24 Cal. 3d 773, 785 (1979).

In the present case, it is undisputed that Defendants Wahl, Lee,

and Triant approved of the investment in Optiva without first

securing written approval from the SBA.

    "It is a fundamental rule that the conditions under which the

corporate entity may be disregarded, or the corporation be

34

regarded as the alter ego of the stockholders, necessarily vary according to the circumstances in each case inasmuch as the doctrine is essentially an equitable one and for that reason is particularly within the province of the trial court." <u>Associated Vendors, Inc. v. Oakland Meat Co.</u>, 210 Cal. App. 2d 825, 836-37 (Ct. App. 1962) (internal quotation marks and alterations omitted).  "The two requirements are (1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow."  <u>Id.</u> at 837.

> The general rule is thus stated as follows: Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must be made to appear that the corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

<u>Id.</u> (internal quotation marks omitted).  This entails "a factual inquiry that should be done on a case-by-case basis."  <u>Calvert v. Huckins</u>, 875 F. Supp. 674, 678 (E.D. Cal. 1995).  "[S]uch determination is primarily one for the trial court and is not a question of law; and . . . the conclusion of the trier of fact will not be disturbed if it be supported by substantial evidence." <u>Associated Vendors</u>, 210 Cal. App. at 837.  As this issue raises

United States District Court
For the Northern District of California

1    triable issues of fact, it is a question for a jury.

2         3.   Defenses

3         Defendants raise various defenses.  First, Defendants assert

4    that because the SBA, in an audit of Alto Tech for the period of

5    March 2002 through March 2003, found no instances of noncompliance

6    with the Regulations or any other laws, the SBA should be estopped

7    from bringing the present action.  See Russo Decl., Docket No. 67,

8    Ex. E.  In a letter dated August 29, 2003, the San Francisco SBA

9    office stated, in part: "We have completed our examination of Alto

10   Tech II, L.P.  The purpose of the examination was to determine

11   whether the licensee complied with the laws, rules, and

12   regulations, and established policies governing the SBIC progam.

13   We found no instances of noncompliance with these requirements."

14   Id.

15        Defendants' argument is foreclosed by Ninth Circuit

16   authority.  In ANA Small Business Investments, Inc. v. Small

17   Business Administration, 391 F.2d 739 (9th Cir. 1968), the court

18   stated that even when an SBIC seeks, and receives, assurances from

19   an SBA regional office prior to undertaking a questionable action,

20   "neither principles of estoppel nor any other equitable

21   consideration entitle [the SBIC] to immunity from the statutory

22   and regulatory proscriptions in question."  Id. at 743.  In the

23   present case, the above-cited letter from the SBA was issued from

24   the local San Francisco office.  Russo Decl. Ex. E.  More

25   importantly, the assurances were issued more than a year after

26   Alto Tech made the Optiva Investment.

27        Defendant Triant also argues that he is shielded from any

28                                    36

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

liability arising from the Optiva Investment because of a release

agreement contained in his separation package.[15]   As part of his

resignation from ATM and ATV on November 1, 2003, Triant signed a

separation package which contained several provisions dedicated to

the release of liability.   Triant Decl. Ex. E ("Separation

Package").   The Separation Package was executed by Defendant Wahl,

in her capacities as manager of Alto Tech, ATV, and ATM, and by

Defendant Triant.   Separation Package ¶¶ 17-19.

The SBA argues that the entire Separation Package was in

violation of the Regulations, and, therefore, a violation of the

Partnership Agreement.[16]   Thus, according to the SBA, the

Separation Package was beyond the scope of the Partnership to

effectuate.

The Court concludes that the Separation Package and related

release of liability clauses do not shield Triant from any

liability he may have incurred when he helped approve the Optiva

Investment.   A contrary holding would permit officers and Control

---

[15]   The SBA, for the first time in its Opposition to Triant's
Motion, argues that this Separation Package is also a violation of
both the Regulations and of the Management Agreement.   As this
allegation was not included in the Complaint, the SBA may not now
raise it as an additional source of liability.

[16]   As discussed above, the Partnership Agreement states that
"the Partnership shall . . . have the powers, responsibilities, and
be subject to the limitations, provided in the SBIC Act."
Partnership Agreement ¶ 2.01.   The Partnership Agreement further
states  that the "management and operation of the Partnership and
the formulation of investment policy is vested exclusively in the
General Partner, which shall have the rights and powers which may
be possessed by a general partner under the Act . . . ."   Id. ¶
3.01.   It further states: "So long as the General Partner remains
the general partner of the Partnership and so long as the
Partnership is licensed as an SBIC, it will comply with the
requirements of the SBIC Act."   Id. ¶ 3.01(d)(i).

United States District Court
For the Northern District of California

Persons of funds similar to Alto Tech to sign agreements with one
another in order create immunity for themselves from subsequent
actions by limited partners.   Such power is beyond the scope of
authority designated to even a general partner.

Finally, Defendants' argument regarding the SBA's alleged
inability to prove damages presents triable issues of fact and, as
such, is one for the jury.

**VIII.     CONCLUSION**

For the reasons discussed herein, the SBA's Motion is DENIED;
the Wahl/Lee Motion is GRANTED IN PART AND DENIED IN PART; and
Triant's Motion is GRANTED IN PART AND DENIED IN PART.   The
Defendants are GRANTED, and the SBA DENIED, summary judgment on
the causes of action for (1) breach of fiduciary duty; (2)
negligence; and (3) breach of the Partnership Agreement, as these
claims are barred by the applicable statutes of limitations.   All
parties are DENIED summary judgment on the fourth claim for breach
of the Management Agreement.   Thus, the only matter remaining at
issue for trial is the claim for breach of contract under the
Management Agreement.

IT IS SO ORDERED.

Dated: December 17, 2008                    _Samuel Conti_
                                           _____
                                           UNITED STATES DISTRICT JUDGE